**In re BARTMANN, William R. and Bartmann, Kathryn A., Debtors.**

No. 03–04975–R.

United States Bankruptcy Court, N.D. Oklahoma.

July 14, 2004.

R. Casey Cooper, Cooper, McKinney & Woosley, PLLP, Tulsa, OK, for Debtors.

Patrick J. Malloy, Malloy & Malloy, Inc., Tulsa, OK, for movant, Patrick J. Malloy III, Chapter 7 Trustee.

Stephen Modovsky, Modovsky Law Office, P.C., Tulsa, OK, for respondent.

*ORDER GRANTING IN PART TRUSTEE'S MOTION PURSUANT TO 11 U.S.C. § 329, BANKRUPTCY RULE 2017 AND 11 U.S.C. § 105 FOR DISGORGEMENT OF ATTORNEY FEES; IMPOSITION OF SANCTIONS AND DISQUALIFICATION OF COUNSEL FOR THE DEBTOR*

DANA L. RASURE, Bankruptcy Judge.

Before the Court are—

- Trustee's Motion Pursuant to 11 U.S.C. § 329; Rule 2017 BRCP; and 11 U.S.C. § 105 for Disgorgement of Attorney Fees; Imposition of Sanc-

tions; [and] Disqualification of Counsel for the Debtor . . . , filed on March 9, 2004 ("Trustee's Motion");

- Objection to Trustee's Motion Pursuant to 11 U.S.C. § 329, Fed. R. Bankr. P.2017 and 11 U.S.C. § 105 for Disgorgement of Attorney Fees; Imposition of Sanctions; [and] Disqualification of Counsel for the Debtor . . . and Brief in Support, filed on April 2, 2004 ("Objection to Trustee's Motion");

- Trustee's Supplement to Motion For Disgorgement Of Attorney Fees; Imposition Of Sanctions; Disqualification Of Counsel For The Debtor; . . . and Reply To The Objection To Such Motion, filed on April 16, 2004; and

- Reply to Trustee's Supplement to Motion for Disgorgement of Attorney Fees; Imposition of Sanctions; Disqualification of Counsel for the Debtor . . . and Brief in Support, filed on April 23, 2004.

A hearing on this matter was held on April 28, 2004, at which Patrick Malloy appeared on behalf of himself as Chapter 7 trustee (the "Trustee"), Stephen Modovsky appeared on behalf of himself, and Casey Cooper appeared on behalf of the Debtors, William R. and Kathryn A. Bartmann (the "Bartmanns"). Upon consideration of the pleadings, the exhibits and testimony presented at the hearing, the briefs and oral arguments of counsel and the applicable law, the Court finds and concludes as follows:

## I. Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 157(a), 157(b)(2)(A), and 1334, and Miscellaneous Order No. 128 of the United States District Court for the Northern District of Oklahoma: Order of Referral of

Bankruptcy Cases effective July 10, 1984, as amended.

## II. Contentions of the parties

The Trustee requests that the Court enter an order requiring attorney Stephen Modovsky to disgorge and pay to the estate a total of $28,000 consisting of fees paid by the Bartmanns to Mr. Modovsky during the seven days immediately prior to the date the Bartmanns filed their bankruptcy petition.[1] The Trustee asserts three grounds for disgorgement: First, that Mr. Modovsky accepted the funds from the Bartmanns with knowledge that the Bartmanns were restrained from transferring property by an order of this Court; second, that Mr. Modovsky failed to disclose his receipt of the funds as required by the Bankruptcy Code and Bankruptcy Rules; and third, that the fee should be disgorged as unreasonable pursuant to 11 U.S.C. § 329. Although the Trustee stated that he believed that other grounds existed to challenge the transfer of $28,000 to Mr. Modovsky—as an unauthorized post-petition transfer, a preference or a fraudulent transfer, for example—those grounds were not asserted in the Trustee' Motion, and would likely require the commencement of an adversary proceeding, and therefore the hearing was limited to and this decision is based upon the above three articulated grounds for disgorgement.

Mr. Modovsky argues that the transfers did not violate the Court's restraining order; that he was not required to disclose his receipt of prepetition compensation because the compensation was not for services rendered in contemplation of or in connection with this bankruptcy case; and that in any event, the amount Mr. Modovsky received from the Bartmanns was a reasonable fee for the services rendered.

## III. Findings of fact

In the summer of 2003, in an adversary proceeding styled *Commercial Financial Services, Inc. v. William R. Bartmann and Kathryn A. Bartmann (In re Commercial Financial Services, Inc.)*, Adv. No. 99–0006–R, this Court entered a multimillion dollar judgment in favor of Commercial Financial Services, Inc. ("CFS") and against each of the Bartmanns following a bench trial (the "Judgment" or "CFS Judgment").[2] Although the Bartmanns attempted to terminate their litigation counsel, members of the Hall Estill firm, on the morning of the trial, this Court declined to allow Hall Estill to withdraw from representing the Bartmanns.

On or about July 3, 2003, the Bartmanns retained Mr. Modovsky. Although Mr. Modovsky contends that the Bartmanns initially hired him to prosecute an appeal of the CFS Judgment and to monitor a spate of civil litigation pending against the Bartmanns in state and federal court, the

---

1. The fees were paid with a series of checks. While some or all of the checks did not complete the clearing process prior to the filing of the bankruptcy petition and thus the fees were not actually transferred to Mr. Modovsky until after the bankruptcy petition was filed, the issue of whether the fees are recoverable as unauthorized postpetition transfers pursuant to 11 U.S.C. § 549 is not before the Court at this time.

2. On July 22, 2003, the Court entered a Judgment on Partial Findings establishing that Mr.

Bartmann was liable on a note having an outstanding principal balance of $14,388,154.35 and that Mrs. Bartmann was liable on a note having an outstanding principal balance of $2,089,642.40. Additional evidence was taken to determine the amount of interest due on the notes. On August 5, 2003, a final judgment was entered against Mr. Bartmann in the amount of $18,082,617.47 and against Mrs. Bartmann in the amount of $2,629,070.02.

record reflects that judgment had not yet been entered against the Bartmanns as of July 3, 2003. On July 22, 2003, the date the Court entered a Judgment on Partial Findings against the Bartmanns, Mr. Modovsky entered an appearance in the CFS adversary proceeding. On July 30, 2003, Mr. Modovsky filed a Notice of Appeal on behalf of the Bartmanns. On August 5, 2003, the Court entered the Judgment against the Bartmanns. On August 6, 2003, the Court entered an order permitting the Hall Estill firm to withdraw from representing the Bartmanns in the CFS adversary proceeding.

Mr. Modovsky testified that at their first meeting, on or about July 3, 2003, he and Mr. Bartmann agreed upon a fee of $50,000 and that Mr. Modovsky accepted a payment of $10,000 to commence work. Trustee Exhibit 10 at 10.3. Mr. Modovsky testified that he subsequently agreed to reduce the fee from $50,000 to $38,000. This testimony suggests that Mr. Modovsky intended to charge a flat fee to the Bartmanns to represent them for a certain array services, although the parameters of the services anticipated at that point is not clear. Mr. Modovsky also testified, however, that he was retained on an hourly basis rather than a flat fee basis. Whatever agreement existed between Mr. Modovsky and the Bartmanns was not reduced to writing. Mr. Modovsky did not present any testimony from the Bartmanns as to their understanding of the fee arrangement.

On August 11, 2003, Mr. Modovsky filed a designation of record and statement of issues on appeal. Also on August 11, 2003, upon application by CFS, this Court issued to each of the Bartmanns, an Order Requiring Judgment Debtor to Appear and Answer Concerning Property and Assets and for an Injunction Forbidding Transfer or Other Disposition of Property. *See*

Trustee's Exhibits 11 and 12 ("Orders to Appear"). The Orders to Appear required the Bartmanns to appear in court on August 27, 2003, to be examined about their assets, required them to bring copies of pertinent records, and enjoined them from dissipating their assets as follows:

YOU ARE ORDERED NOT TO PAY OUT, TRANSFER, MORTGAGE, ALIENATE, ENCUMBER OR MAKE ANY OTHER DISPOSITION OF MONEY, PROPERTY OR ASSETS EITHER REAL OR PERSONAL, NOT EXEMPT BY LAW, UNTIL FURTHER ORDER OF THIS COURT, except for the reasonable and necessary support of self and family.

Trustee Exhibits 11 and 12 (the "Injunction").

On August 22, 2003, Mr. Modovsky filed an Emergency Motion for Stay Without Bond Pending Appeal, seeking an order staying CFS's execution of the Judgment. The Emergency Motion was set for hearing on August 27, 2003. On August 23 and 24, 2003, Mr. Modovsky spent 14.5 hours researching and preparing "Chapter 11 Documents" for which Mr. Modovsky charged the Bartmanns $2,175.00. Modovsky Invoice dated March 3, 2004 (the "Invoice"), Modovsky Exhibit 1 at 1.3.

The Bartmanns appeared before this Court with Mr. Modovsky on the morning of August 27, 2003, and after the Court denied the Emergency Motion for a stay of enforcement of the CFS Judgment, counsel for CFS began his examination of Kathryn Bartmann at approximately 12:00 noon. Trustee Exhibit 1. When asked whether she had transferred any assets since August 14, 2003, presumably the date the Order to Appear and Injunction had been served upon her, Mrs. Bartmann stated that she had written approximately twenty-five checks totaling approximately $20,000, including, as Mr. Modovsky him-

self reminded her, a sizable check to Mr. Modovsky. Trustee Exhibit 1 at 1.5–1.6 and 1.51–1.52. Indeed, on August 26, 2003, Mrs. Bartmann had written a check to Mr. Modovsky in the amount of $14,000. Trustee Exhibit 10 at 10.4. Also during the period when she was enjoined from transferring assets, Mrs. Bartmann had withdrawn $10,800 in cash from other checking accounts which, she testified, she intended to use to pay bills. Trustee's Exhibit 1 at 1.1.11–1.12. As a result of transfers made subsequent to the service of the Order to Appear and Injunction, less than $2,000 remained in Mrs. Bartmann's bank accounts. At 2:51 p.m., the Bartmanns requested a recess of the asset hearing for a "personal emergency." At 3:23 p.m., the Bartmanns returned to the asset hearing, whereupon Mr. Modovsky announced that the Bartmanns had filed a voluntary Chapter 11 petition during the recess. Trustee Exhibit 1.66–1.67. Due to the imposition of the automatic stay, CFS terminated the asset hearing.

Although CFS did not have an opportunity to examine Mr. Bartmann about any asset transfers he had made after receiving the Order to Appear and Injunction, the Trustee introduced into evidence two checks written by Mr. Bartmann on one of his accounts made payable to Mr. Modovsky, one dated August 20, 2003, in the amount of $7,000 and the second check dated August 21, 2003, also in the amount of $7,000. Trustee Exhibit 10 at 10.1 and 10.2. Thus, as of August 27, 2003 (the "Petition Date"), the Bartmanns had delivered checks in the amount of $38,000 to Mr. Modovsky, of which $28,000 was transferred subsequent to the issuance and service of the Injunction.[3] Mr. Modovsky was aware of the Injunction when he accepted the checks, but was of the opinion that the Injunction did not preclude the payment of legal fees. When he accepted the payments, Mr. Modovsky did not know whether he had already earned the payments or whether the payments were for future services.

On August 28, 2003, Mr. Modovsky filed a "Disclosure of Compensation of Attorney for Debtor" in this bankruptcy case pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b) ("Disclosure"). In his Disclosure, Mr. Modovsky certified that he was the attorney for the debtors and that—

compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| For legal services, I have agreed to accept ... | $ Upon Application |
| Prior to the filing of this statement I have received ... | $ 0 |
| Balance Due ... | $ To Be Determined |

Trustee Exhibit 2.

On September 5, 2003, CFS filed a motion for the appointment of a Chapter 11 trustee or for conversion of the Chapter 11 case to a Chapter 7 case (Doc. 9).

On September 11, 2003, Mr. Modovsky filed an "Affidavit of Proposed Attorney and Disclosure Statement Pursuant to Sections 329 and 504 of the Bankruptcy Code and Federal Rules of Bankruptcy Proce-

---

**3.** At the hearing, Mr. Modovsky testified that he did not know whether the payments made to him by the Bartmanns were placed in a trust account or in his general operating account and he did not know when he applied the funds to pay for any particular services. There is no credible evidence that Mr. Modovsky ever accounted to the Bartmanns regarding his application of the $38,000 until Mr. Modovsky was required to provide such information to the Trustee in March 2004. As of the date of the hearing, all of the funds had been taken into income by Mr. Modovsky, although it was not clear whether Mr. Modovsky did so prior to or after the Petition Date.

dure §§ 2014 and 2016" ("Affidavit"). Trustee Exhibit 3. In his Affidavit, Mr. Modovsky stated that—

> Prior to the commencement of this case on August 27, 2003, the Firm has not received payment from the Debtor for legal services rendered prepetition to the Debtor in this case and pertaining to this case. Stephen J. Modovsky has not been paid a retainer for services to be rendered in this case.

Trustee Exhibit 3 at 3.2, ¶ 8. In fact, Mr. Modovsky had been paid $38,000 prior to the commencement of the case, some of which was paid for research and preparation of "Chapter 11 documents."[4] Also on September 11, 2003, the Bartmanns filed their Schedules and Statement of Financial Affairs ("SOFA"). Doc. 18. Notwithstanding that Mr. Modovsky represented the Bartmanns as Chapter 11 debtors in possession, and had an obligation to advise the Bartmanns concerning disclosures of their financial affairs, the Bartmanns did not disclose their payments to Mr. Modovsky in paragraph 3 of the SOFA (which requires disclosure of payments made to any creditor in aggregate of more than $600 within the 90 days prepetition),[5] in paragraph 9 of the SOFA (requiring disclosure of all payments made or property transferred to attorneys for consultation concerning relief under bankruptcy law or preparation of a petition within one year prior to filing),[6] or in paragraph 10 of the SOFA (requiring disclosure of any other transfers for security, which would include any unearned retainer not otherwise disclosed, regardless of whether such retainer was for bankruptcy services).[7]

On September 15, 2003, Kathryn Bartmann, as the responsible party, prepared and filed a monthly operating report for the period of August 28, 2003, to September 1, 2003, in which she reported that professional fees in the amount of $28,000 had been paid to Mr. Modovsky *from assets of the estate.* Trustee Exhibit 4 at 4.2, 4.8. On page 8 of the operating report, Mrs. Bartmann explained that the checks representing these payments were written and delivered prepetition but had not cleared or been paid by the bank until after the petition was filed. As proposed counsel to debtors in possession, Mr. Modovsky had a duty to protect the integrity of the estate by advising the Bartmanns to close their prepetition bank accounts in order to prevent the unauthorized payment of prepetition debts with assets of the Chapter 11 estate, but he failed to do

---

4. In his Objection, Mr. Modovsky states that as of "the date the Chapter 11 was *hastily filed,* billing had exceeded the retainer, and nothing was billed for the bankruptcy case." Objection to Trustee's Motion at 2, n. 2 (emphasis in original). Mr. Modovsky reasserted that position in his testimony at the hearing, where he testified: "I wasn't paid a dime for *the bankruptcy.*"

A review of Mr. Modovsky's billing statement, Modovsky Exhibit 1, however, indicates not only that Mr. Modovsky billed for 14.5 hours in connection with preparation of chapter 11 documents, but also that as of the Petition Date, payments by the Bartmanns exceeded the amount eventually billed by more than $9,000. Thus, all fees incurred in contemplation of the bankruptcy were fully

paid prior to the Petition Date and Mr. Modovsky in fact held unearned funds.

5. Mr. Modovsky contends that the payments made to him by the Bartmanns were for services rendered prior to payment, which makes him a creditor to whom payments in aggregate of more than $600 were made within the 90 day window.

6. Mr. Modovsky had been paid $2,175 for services related to the bankruptcy filing.

7. As of the Petition Date, Mr. Modovsky had been paid more than he had earned and therefore possessed a retainer as security for future services, which retainer constituted property of the estate.

so. Mr. Modovsky personally benefitted from his deficient representation of the estate by accepting payment of prepetition checks with postpetition funds. Despite the Trustee's demands, Mr. Modovsky has refused to return such funds to the Trustee for distribution to the Bartmanns' creditors.

■ On September 18, 2003, the Bartmanns, through Mr. Modovsky, filed the "Debtor's Application to Employ Counsel," to which was attached an Affidavit of Stephen J. Modovsky certifying that he did not hold any interest adverse to the debtors and that he was disinterested, as that term is defined in 11 U.S.C. § 101(14), notwithstanding that he had been paid more than he earned prepetition and therefore held property of the estate in excess of $9,000, and that he was the recipient of a postpetition transfer not authorized by the Bankruptcy Code or by the Court and therefore was a potential target of a Section 549 avoidance proceeding. Trustee's Exhibit 5.[8]

Also on September 18, 2003, an evidentiary hearing was held on the CFS's motion for appointment of a Chapter 11 trustee or to convert the case to one under Chapter 7. At the evidentiary hearing, while being examined by counsel for CFS, Mrs. Bartmann confirmed that checks in the aggregate amount of $28,000 had been transferred to Mr. Modovsky immediately prior to the filing of the Chapter 11, but that the checks did not clear the bank until after the filing. Modovsky Exhibit 10 at 10.48–52. Mrs. Bartmann also testified on

direct that she did not have any knowledge regarding the nature of the payments, *i.e.,* whether they constituted a retainer for future services or the payment of previously rendered services. *Id.* During Mr. Modovsky's cross-examination of Mrs. Bartmann, the following colloquy occurred:

Q: (by Mr. Modovsky): Ms. Bartmann, you weren't present when Mr. Bartmann and the Modovsky Law Office entered into their contract for legal representation, were you?

A: (by Mrs. Bartmann): No, I was not.

Q: Okay. Have you had conversations with Mr. Bartmann since that time?

A: Yes, I have.

Q: Okay. And the evidence put forth shows that you make [sic] payments of $28,000 to date. Okay. Is that what you recall?

A: Yes.

Q: Okay. Is it your understanding that any more money is owed?

A: No.

Q: But isn't—isn't that different from the original understanding, Ms. Bartmann?

A; Could you rephrase that?

Q: In that agreement, where you weren't present, where your husband and Modovsky Law Office entered into agreement for legal representation, do you know what that total amount was?

A: Fifty.

---

**8.** Nor did the application request that Mr. Modovsky's retention be approved as of the Petition Date. Generally, approval of employment of professionals is granted as of the date the application was filed, rather than the date the professional first rendered services to the debtor, unless convincing evidence is submitted showing that extraordinary circumstances prevented the debtor or professional from fil-

ing an application in a timely manner. *See Land v. First Nat'l Bank (In re Land),* 943 F.2d 1265, 1267–68 (10th Cir.1991).

Thus, even if Mr. Modovsky's employment had been authorized, such employment would have been effective as of September 18, 2003, and he could not have paid for services rendered to the estate prior to that date.

Q: Okay. Was—is the Modovsky Law Office listed on any of the schedules as a creditor?

A: No.

Q: What is your understanding of that? [objection interposed and overruled]

\* \* \* \* \* \*

Q: Let me just ask you this: In your subsequent conversations with Mr. Bartmann what was the total amount to Modovsky Law Offices for legal representation?

A: Fifty thousand.

Q: Okay. And if 28,—has been paid, what has happened to the remaining 22,000 that's owed to the Modovsky Law Office?

9. Mr. Modovsky's representations as to the character of his fee arrangement with the Bartmanns are wildly contradictory and thus wholly lacking in credibility. For example, Mr. Modovsky stated in his Objection to Trustee's Motion, which he drafted, executed and filed on April 2, 2004, that "on or about July 1, 2003, for representing the Bartmanns either directly, or for assisting in [Mr. Bartmann's] representation in the criminal matter, [Mr. Bartmann] agreed to pay Modovsky the sum of $50,000, an amount that shortly thereafter was reduced by Modovsky to $38,000," (Objection at 2, ¶ 9), and that "on August 25th and August 26th ... [Mr. Bartmann] executed two $14,000 checks to Mr. Modovsky in full payment of the (reduced) fee agreement negotiated on or about July 1, 2003" (Objection at 4, ¶ 18). At the disgorgement hearing, held only three weeks after Mr. Modovsky filed his Objection, Mr. Modovsky took a contrary position, insisting that the parties did not initially agree to a flat fee of $50,000, and that they arrived at the $50,000 figure only *after* services were rendered and the bill was tallied.

> Q: [by the Trustee][At your initial meeting with Mr. Bartmann,] did you and Mr. Bartmann discuss any fee arrangement?
> A: [by Mr. Modovsky] Yes we did.
> Q: And can you tell the court what that agreement was?

A: The law firm waived it.

Transcript of Hearing of September 18, 2003, Modovsky Exhibit 10 at 10.66–68. Thus, Mr. Modovsky elicited testimony that his original arrangement with the Bartmanns required the payment of $50,000, that he had been paid only $28,000, and that he had waived the remaining $22,000. Modovsky Exhibit 10 at 10.66. Although Mrs. Bartmann may have not known that Mr. Modovsky had been paid $38,000 rather than $28,000, or that Mr. Modovsky purportedly waived $12,000 rather than $22,000, Mr. Modovsky knew or should have known that the testimony he was eliciting from Mrs. Bartmann was false, or at least incomplete and misleading.[9] Mr. Modovsky failed to correct the

A: As I said, the $10,000 was paid down. And it was a situation where, given the complexity of it, and the length of time and the—the different number of cases in litigation, that we would have to just gauge it as we went, Your Honor.

Q: So he paid you $10,000 down?

A: That's correct.

Q: Did you discuss a total figure that you would receive to do work?

A: No. As I said, it was a situation given the complexity of it, 96 boxes of files, the number of different cases, the appeals. There was—there was no ceiling put on that, Mr. Malloy.

Q: So you didn't reach an agreement that it was to be $50,000 and then reduced later to some other number?

A: We—we agreed later. I—I think what the comments were in the hearings were that I agreed to reduce to the *balance of my statement*, which at the time may have been 50, because it was my understanding I couldn't represent them in the 11, once it was determined.

Q: Okay. I'm not asking, Mr. Modovsky, about the Chapter 11. I'm asking about this initial meeting with Mr. Bartmann, whether you and Mr. Bartmann agreed to a sum certain at that time.

A: And I think I answered that, Mr. Malloy. I said we did not agree on a ceiling. There was just no way to tell.

record through further examination of the Bartmanns, and has never attempted to rectify the false impression created by the testimony as required by the Oklahoma Rules of Professional Conduct. *See* Rules of Professional Conduct, 5 O.S. ch. 1, App. 3–A, Rule 3.3.[10] The Court did not learn that Bartmanns had paid Mr. Modovsky a total of $38,000 until the *Trustee* introduced the checks into evidence at the hearing on the Trustee's motion to disgorge. Trustee Exhibit 10.

Mr. Modovsky contends that even if he did not disclose his prepetition transactions with the Bartmanns in his Disclosure or Affidavit, he did furnish the Court with the information through Mrs. Bartmann's testimony. Unfortunately, the testimony elicited was not complete or accurate and the testimony materially understated the amount paid to Mr. Modovsky prior to the Petition Date.[11]

On September 19, 2003, the Court granted CFS's motion to convert the Bartmanns' Chapter 11 case to one under Chapter 7 and Mr. Malloy was appointed as the Chapter 7 trustee. Upon conversion, only the Chapter 7 trustee was authorized to employ professionals on behalf of the estate and accordingly, the Court struck as moot the Bartmanns' application to employ Mr. Modovsky. Trustee Exhibit 6. Mr. Modovsky has never been employed as an estate professional and his postpetition services are not compensable with estate assets. *See* 11 U.S.C. §§ 327, 330.

On January 13, 2004, the Trustee requested in writing that Mr. Modovsky provide. him with information concerning all prepetition retainers paid to him by the Bartmanns and "an accounting with respect to the disposition of the retainer[s]." Modovsky Exhibit 13. In a letter to Mr. Modovsky dated February 25, 2004, the Trustee reiterated his prior request, stating that he had not received an accounting of Mr. Modovsky's application of the pay-

---

Q: ... did you agree that you would bill him on an hourly basis?
A: Yeah, hourly basis.

Transcript of Hearing of April 28, 2004 (Doc. 340) at 45–46 (emphasis added). In addition, Mr. Bartmann did not execute two $14,000 checks on August 25 and 26, 2004, as represented by Mr. Modovsky in his Objection. Rather, Mr. Bartmann wrote two $7,000 checks—one on August 20, 2004 and one on August 21, 2004—and Mrs. Bartmann wrote a $14,000 check on August 26, 2004. Mr. Modovsky's cavalier misrepresentations and inconsistent accounts of matters as central and crucial to this proceeding as the nature of his fee agreement with the Bartmanns and the amount and timing of the payment of fees undermine the credibility of all his representations to the Court.

10. Rule 3.3 provides—

(a) A lawyer shall not knowingly

* * * * *

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take the following remedial measures:

(A) when a client has offered false evidence, the lawyer shall promptly call upon the client to rectify the same; if the client refuses or is unable to do so, the lawyer shall promptly reveal its false character to the tribunal.

Rule 3.3(b) imposes a continuing duty upon the lawyer to disclose the falsity of evidence offered to a tribunal even if compliance requires the disclosure of information protected by the attorney-client privilege.

11. In addition, the Court is not obligated to cobble together facts gleaned from evidence offered by the debtor in proceedings unrelated to counsel's employment to discover prepetition transactions between counsel and the debtors that counsel had a duty to disclose. *See Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.),* 210 B.R. 844, 849 (10th Cir. BAP 1997) (rejecting contention that disclosure of counsel's prepetition retainer in debtor's statement of financial affairs satisfies counsel's obligation to disclose the retainer in counsel's Rule 2016 statement).

ments, and further advised of his belief that the $28,000 paid to Mr. Modovsky by the Bartmanns after the service of the Orders to Appear were transfers made in violation of the Injunction. Modovsky Exhibit 3. The Trustee demanded that Mr. Modovsky disgorge $28,000 to the estate within five days. In a letter to the Trustee dated March 1, 2004, Mr. Modovsky responded that the Bartmanns' payment of $28,000 for legal services—

> was a legal permissible payment, and that your [the Trustee's] and the Court's activities over the past seven months have tacitly acknowledged that my office has, and continues to provide, billable legal services to the debtors and have required that I perform duties on their behalf. I am certain that you do not mean to imply that the Order enjoined the debtors from hiring legal counsel, particularly since the Courts, and you, as an officer of the Court, requested and prompted my office work to be performed on the debtors' behalf.

Modovsky Exhibit 4 at 4.1 Modovsky further contended that "payment made for legal services for defense against the [CFS] judgment was 'reasonable and necessary support of self and family'" and therefore, in his opinion, did not violate the Injunction. Modovsky Exhibit 4 at 4.2. Mr. Modovsky also argued that the Bartmanns had a legal right "to retain counsel in anticipation of filing bankruptcy. Having done so, the only issue for the Court (not the Trustee) to determine is whether the fee that is being tabulated, and which now appears to be approximately $34,000 more than was given in the payment you reference, is a reasonable one." *Id.* Finally, Mr. Modovsky justified the delay in compiling a billing statement for the Bartmann cases on the grounds of their complexity, but promised to provide the Trustee an accounting of his services by March 3, 2004.

In a letter dated March 3, 2004, the Trustee informed Mr. Modovsky that his failure to disclose the payment of fees paid in anticipation of filing bankruptcy constituted an additional ground for disgorgement. Modovsky Exhibit 5. At that point, Mr. Modovsky retreated from his position that the Bartmanns retained him "in anticipation of filing bankruptcy" and asserted that he did not receive *any* fees "in contemplation of or in connection with the bankruptcy case" and took the position that the fee was paid solely "to represent the Bartmanns in matters pertaining to the $20M judgment." Modovsky Exhibit 6. Mr. Modovsky also changed his position as to whether the Court had discretion to review his prepetition transactions with the Bartmanns. Modovsky Exhibit 8 at 8.2 ("it is my position that § 329 does not provide you or the Court a basis for canceling the fee agreement or for causing the return of any 'excessive amounts'....").

Later on March 3, 2004, Mr. Modovsky provided the Trustee the Invoice which purports to itemize (1) services rendered during the period of July 15, 2003 through September 18, 2003, (2) the number of hours expended on such services, (3) the rate charged per hour, and (4) the resulting fee charged. Modovsky Exhibit 1. In the Invoice, Mr. Modovsky represents that he rendered 281 hours of legal services at $150 per hour, resulting in fees in the amount of $42,150. The Invoice also represents that Mr. Modovsky incurred expenses as follows: $150.00 for "Court fees—Filing of Notice of Appeal in 99–0006–R," $56.21 for "Postage for July—September," $201.00 for "Storage fees—July—September," and $588.00 for "copies—July—September 2003," for a total of $995.21.

The Invoice does not sufficiently detail the services rendered or expenses incurred

in order to permit the Court to perform an informed analysis of the reasonableness or necessity of the services or expenses. For example, time is reported in half hour increments, most entries lump all work into one transaction per day, and most entries simply refer to one of ten possible categories of services rendered during a day rather than provide a narrative of the actual work performed. The categories of services are listed on an attachment to the Invoice as follows:

- Category I—Research issues to be presented upon appeal;

- Category II—Research pleadings/issues from Case No. 98–05162–R [the CFS bankruptcy case];

- Category III—Research issues from Adversary No. 99–0006–R [the *CFS v. Bartmann adversary proceeding* ];

- Category IV—Research issues from Case No. 98–05162–R [Category II and IV appear to cover identical issues and pleadings—the Invoice contains no entries under Category IV however];

- Category V—Research case law [providing a list of cases reviewed];

- Category VI—Research Constitutional Provisions [specifically the Seventh Amendment];

- Category VII—Research Statutes [providing a list of statutes reviewed];

- Category VIII—Research Other Authorities [providing a list of statutes, rules, hornbooks, etc.];

- Category IX—Emergency Stay Hearing: Research/Drafting; and

- Category X—Conversion Hearing: Research/Drafting.

Thus, for example, the entries for July 23 and 24, 2003, state—

| | | | |
|---|---|---|---|
| 7/23/2003 | SJM Research Category III and Category II | 9.00 150.00/hr | $1,350.00 |
| 7/24/2003 | SJM Research Category VIII, Category I, Category V, Category VI | 7.50 150.00/hr | $1,125.00 |

Modovsky Exhibit 1 at 1.1.

As stated above, however, entries for August 23 and 24, 2003 report 14.5 hours spent "Research[ing] Category VIII, Prepar[ing] Chapter 11 Documents" for a fee of $2,175.00. Modovsky Exhibit 1 at 1.3.[12] The entry for August 27, 2003, the day the Bartmanns filed bankruptcy, represents that Mr. Modovsky charged for 5.0 hours

to "Attend Bankruptcy Asset Hearing [and] Prepare documents" for a fee of $750.00. Thus, it is clear from Mr. Modovsky's Invoice that the Bartmanns had retained Mr. Modovsky to provide services "in contemplation of or in connection with the bankruptcy case" at least several days prior to filing. Mrs. Bartmann paid Mr. Modovsky $14,000 on August 26, 2003, *af-*

12. Notwithstanding the Invoice, however, at the hearing on the Trustee's request for disgorgement, Mr. Modovsky represented that the Bartmanns had never thought of filing bankruptcy until the day of the asset hearing—August 27, 2003. Mr. Modovsky testified: "Your honor, I can't state enough. At the time those payments were made we had no idea it was on the eve of bankruptcy" and that the "decision [to file bankruptcy] was made, on the day of the asset hearing .... it was a hand written petition." Transcript of Hearing of September 18, 2003 (Doc. 340) at 33, 37–38. In addition, Mr. Modovsky testified that he did not charge the Bartmanns anything for services in connection with the bankruptcy case.

*ter* the preparation of Chapter 11 documents, and one day prior to the Petition Date.

As of the Petition Date, the Bartmanns had made payments to Mr. Modovsky totaling $38,000, but according to Mr. Modovsky's own Invoice, he had rendered services resulting in fees of only $28,725. Thus, contrary to Mr. Modovsky's sworn statements in paragraph 1 of his Disclosure of Compensation of Attorney for Debtor (Trustee Exhibit 2) and in paragraph 8 of his Affidavit (Trustee Exhibit 3) and in his testimony at the hearing, he had been *fully paid* for services rendered in contemplation of and in connection with the Bartmanns' bankruptcy as well as all services relating to the CFS Judgment that were rendered prior to the Petition Date. In fact, Mr. Modovsky held *unearned funds* as of the Petition Date, which constituted property of the estate, another fact he did not disclose in his Disclosure or Affidavit. To the extent that Mr. Modovsky paid himself from the unearned funds for services rendered *after* the Petition Date, such payments were not authorized by the Court.

## IV. Conclusions of Law

### A. *Transfer of Funds in Violation of Injunction*

The Orders to Appear and Injunction were entered pursuant to Rule 69 of the Federal Rules of Civil Procedure, made applicable in adversary proceedings pursuant to Bankruptcy Rule 7069, and Section 842 of title 12 of the Oklahoma Statutes. Rule 69 provides that a judgment creditor may "obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held." Fed. R.Civ.P. 69(a). Section 842 of title 12 of the Oklahoma Statutes provides that the

judge that entered a judgment may require the judgment debtor to appear before the judge at a specified time and place to testify concerning the judgment debtor's property, and that the court may enjoin the judgment debtor "from alienating, concealing, or encumbering any of the judgment debtor's nonexempt property pending the hearing [on assets] and further order of the court." 12 O.S. § 842(A). The terms of the Injunction in this case permitted the Bartmanns to make routine expenditures for "the reasonable and necessary support of self and family," an exception not expressly required under the statute.

The undisputed facts establish that Mr. Modovsky accepted checks in the aggregate amount of $28,000 from the Bartmanns with knowledge of and notwithstanding the Injunction restraining the Bartmanns from transferring assets. In response to the Trustee's argument that Mr. Modovsky should disgorge assets transferred in violation of the Injunction, Mr. Modovsky contends that the payments fell within the exception for transfers made for "the reasonable and necessary support of self and family."

The Court does not consider the payment of $28,000 for legal services rendered and to be rendered (especially in light of the previous payment of $10,000 for legal services) as a "reasonable" expense nor an expense "necessary for the support of self and family." To the extent that the Bartmanns could have established a pressing need for such legal services *and* the immediate need to pay for the services, an exception from the Injunction might have been granted upon application. However Mr. Modovsky took the risk of interpreting the Court's order to mean that the Bartmanns were not restrained from making transfers to him. Mr. Modovsky was or should have been aware

that his interpretation might be contrary to what the *Court intended* and that the payments were subject to recapture. The prudent course of action, for the protection of the Bartmanns and himself, would have been to seek permission from the Court that issued the Injunction to make the transfers or to request the Court to interpret the scope of the Injunction. Instead, by demanding payment, Mr. Modovsky explicitly or implicitly advised the Bartmanns that making transfers to him for legal services rendered and to be rendered did not violate the Court's order.[13]

██ The very purpose of the Injunction was to prevent the Bartmanns from dismantling their estate in order to frustrate the legitimate rights of executing judgment creditors. At the very least, the consequence of consciously accepting payments in the face of a court order enjoining transfers must be to return the parties to the *status quo*. Had the transfers not been made to Mr. Modovsky, the Bartmanns' bankruptcy estate would have been augmented in the amount of the prohibited transfers. Thus, Mr. Modovsky must return to the estate all transfers made in violation of the Injunction.

██ Mr. Modovsky argues that the Court is somehow estopped from challenging the transfers because "following the disclosure [by Mrs. Bartmann that the Bartmanns transferred $28,000 to Mr. Modovsky after being served with the Injunction], the Court, in its discretion, chose not to pursue contempt charges either against the Bartmanns for issuing the checks, nor Modovsky for accepting the fee." Objection to Trustee's Motion at 4, ¶ 23. While the Court has the power to issue orders *sua sponte* requiring a litigant to show cause why that litigant should not be held in contempt for the violation of a court order, the Court's decision not to act in a *sua sponte* manner does not prevent a party in interest from seeking recourse for conduct committed in violation of a restraining order when such conduct resulted in an inju-

---

13. Mr. Modovsky relies upon *United States v. Jones*, 160 F.3d 641 (10th Cir.1998) for the proposition that legal fees fall within the definition of expenses "reasonable and necessary for the support of self and family." *Jones* does not remotely support Mr. Modovsky's view. The issue in *Jones* was whether a trial court was required to *hold a hearing* to test the validity of a postindictment pre-trial restraint of assets subject to criminal forfeiture when the defendant requested such a hearing based upon a claim that such assets were the defendant's only assets and that such pretrial restraint would deprive defendant of funds to retain and pay her defense counsel and to pay necessary living expenses. The Court held that a defendant could challenge the pretrial restraint of assets but only if the defendant made a showing that she had no other assets available and also made "a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets ... [were] traceable to the commission of" the underlying crime. *Id.* at 647. Only after the defendant satisfied these initial burdens was the court required to hold a hearing

to determine whether the assets were properly restrained.

The *Jones* decision does not authorize a judgment debtor whose assets have been restrained pending an asset hearing to disregard the restraining order in order to pay counsel to attempt to appeal or avoid execution of a civil judgment. Moreover, to the extent that the *Jones* court was influenced to grant the defendant a hearing on the grounds that she might be unjustly deprived of legal counsel if the assets were wrongly restrained, the underlying constitutional principle of a right to counsel arises only in the context of defending criminal charges. *See* U.S. Const. amend. VI. There is no constitutional right to counsel to defend in a civil case. *See MacCuish v. United States*, 844 F.2d 733 (10th Cir.1988).

Thus, Mr. Modovsky has failed to submit any legal justification for his position that a judgment debtor may transfer assets to its lawyer with impunity in the face of an order restraining transfers except for those reasonable and necessary for support.

ry to that party. Here, the Trustee, as the representative of the Bartmanns' estate (which is precisely the estate the Court intended to preserve from dissipation for the benefit of the Bartmanns' creditors when it issued the Injunction) has alleged an injury—dissipation in the amount of $28,000—as the result of the violation of the Injunction, and he is not precluded from doing so merely because the Court chose to wait for a request from a party with standing to prosecute such violation.

■ Mr. Modovsky also contends that if the Trustee took issue with the propriety of the payments, the Trustee should have prevented Mr. Modovsky from further prosecuting the appeal of the CFS Judgment. Mr. Modovsky argues that in permitting him to continue rendering services in connection with the appeal, the Trustee either ratified the payments to Mr. Modovsky for the purpose of pursuing the appeal or is estopped from contesting the payments because his efforts benefitted the estate. Objection to Trustee's Motion at 4–5, n. 7. This argument also lacks merit. There is no evidence that the Trustee requested Mr. Modovsky to pursue the appeal. Mr. Modovsky was, or should have been, well aware that he had not been retained by the Trustee or the estate to prosecute the appeal. Professionals who render services to the estate without first obtaining an order authorizing their employment are effectively volunteers. See *Interwest Business Equipment, Inc. v. United States Trustee (In re Interwest Business Equipment, Inc.)*, 23 F.3d 311, 318 (10th Cir.1994) (rejecting argument

that because court "permitted" firm to represent debtors in possession, which representation benefitted estate, firm should be paid with estate funds even though its employment had never been approved under Section 327). To the extent that the Trustee sought assistance from Mr. Modovsky during the pendency of the Chapter 7 case, Section 521 of the Bankruptcy Code and Bankruptcy Rule 4002 impose various duties upon chapter 7 debtors, including the duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties" and to "cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate." 11 U.S.C. § 521(3); Fed. R. Bankr.P. 4002. Since Mr. Modovsky continued to represent the Bartmanns after conversion of their case to Chapter 7, Mr. Malloy was ethically obligated to contact Mr. Modovsky in order to obtain the cooperation of the Bartmanns regarding the administration of the estate. By virtue of performing his duties as trustee, the Trustee did not ratify or waive any right of the estate to challenge Mr. Modovsky's pre or post petition transactions involving potential property of the estate.

Mr. Modovsky asserts that it is unfair to enforce the Injunction to the extent it would have deprived the Bartmanns of the means to employ him to prosecute an appeal of the CFS Judgment because the Court authorized the Bartmanns' former counsel, Hall Estill, to withdraw from representing the Bartmanns. Objection to Trustee's Motion at 7, n. 11.[14] First, the

**14.** Mr. Modovsky misrepresents the sequence of events concerning Hall Estill's withdrawal as counsel in the *CFS v. Bartmann* adversary proceeding. In his Objection to Trustee's Motion, Mr. Modovsky claims that "on June 12, 2003, after having represented the Bartmanns for over 4 years, [Hall Estill] filed their Motion to Withdraw as Attorney...."

[O]n June 23, 2003, this Court allowed all [Hall Estill] attorneys to withdraw as counsel of record for the [Bartmanns]. That being fact, the Bartmanns, with matters still pending before this Court and millions of dollars at stake, were without legal counsel." Objection to Trustee's Motion, ¶ 4, 6. As the pleadings themselves and the docket sheet indi-

Bartmanns voluntarily terminated Hall Estill and Hall Estill withdrew at the Bartmanns' request. By allowing Hall Estill to withdraw, the Court did not leave the Bartmanns defenseless, however. Mr. Modovsky was retained and was paid $10,000 for future representation *prior to* the entry of an order permitting Hall Estill to withdraw (August 6, 2003)[15] and *prior to* the issuance of the Injunction (August 11, 2003). The order permitting Hall Estill to withdraw specifically recites that Hall Estill was allowed to withdraw because Mr. Modovsky had already entered an appearance on behalf of the Bartmanns. Doc. 193 (Adv. Case No. 99–6). Thus, compliance with the Injunction would not have prevented the Bartmanns from retaining substitute counsel because at the time the Injunction was entered, Mr. Modovsky had already been retained and handsomely paid.

Because Mr. Modovsky accepted transfers during the period the Injunction was effective, and such transfers violated the Injunction, those funds must be surrendered to the estate.

## B. *Failure to Disclose*

■ The Bankruptcy Code and Bankruptcy Rules impose stringent disclosure obligations on attorneys seeking to represent a debtor in a bankruptcy case. Sec-

tion 329 of the Bankruptcy Code provides—

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, *shall file with the court a statement of the compensation paid or agreed to be paid,* if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a) (emphasis added). Bankruptcy Rule 2016 requires that—

Every attorney for a debtor, whether or not the attorney applies for compensation, *shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code* including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed

cates, the motion and order cited by Mr. Modovsky purported to allow Hall Estill to withdraw from a different adversary proceeding, Adv. No. 00–0431–R, and through the clerk's error, the motion and order were filed in the *CFS v. Bartmann* adversary proceeding. Doc. 174, 177 (Adv. No. 99–0006–R). The motion and order were vacated on July 2, 2003. Doc. 179 (Adv. No. 99–0006–R).

Hall Estill in fact filed a motion to withdraw as counsel in the *CFS v. Bartmann* adversary proceeding on July 17, 2003, citing the fact that Bartmanns requested the termination of their representation. Doc. 180

(Adv. No. 99–0006–R). CFS objected to the requested withdrawal because additional evidence was required to be submitted before the Court could enter a final judgment in the *CFS v. Bartmann* proceeding. Doc. 184. Judgment was entered on August 5, 2003 (Doc. 192) and an order permitted Hall Estill to withdraw was entered on August 6, 2003 (Doc. 193).

**15.** As a general matter, the Court does not ordinarily permit counsel to withdraw until substitute counsel has been retained and has entered an appearance.

and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

Fed. R. Bankr.P.2016 (emphasis added). Disclosure of prepetition compensation under Section 329 and Bankruptcy Rule 2016 is mandatory. *See Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.),* 4 F.3d 1556,1565 (10th Cir. 1993)("an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor ... and a court may order an attorney *sua sponte* to disgorge funds already paid to the attorney") (citations omitted).

 Counsel seeking to be employed by a debtor in possession or trustee in a Chapter 11 case must also prove that it is disinterested and free of conflicts of interest. Section 327 permits the Court to approve employment of counsel for a debtor in possession provided that counsel "do[es] not hold or represent an interest adverse to the estate" and counsel is "disinterested" as that term is defined in 11 U.S.C. § 101(14). Bankruptcy Rule 2014 requires proposed counsel to disclose information relevant to a determination of proposed counsel's adverseness or disinterestedness. Rule 2014(a) states—

> The application [of counsel seeking employment under Section 327] *shall state the specific facts* showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, *any proposed arrangement for compensation,* and, to the best of the applicant's knowledge, *all of the person's connections with the debtor,* creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States

trustee. The application shall be accompanied by a *verified statement of the person to be employed setting forth the person's connections with the debtor,* creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr.P.2014(a) (emphasis added). The requirement that proposed counsel for a debtor in possession reveal by a sworn statement all prepetition connections with the debtor is also mandatory. Prepetition representation of the debtor is a "connection with the debtor" and a debtor's prepetition payments to proposed counsel is highly relevant to the determination of whether counsel is disinterested or holds an adverse interest. For instance, such information would reveal whether counsel was a creditor of the estate, whether counsel holds unearned or unapplied funds of the debtor, and whether counsel is a potential target of an avoidance action, all of which could disqualify counsel from representing the debtor in possession.

 The Trustee contends that Mr. Modovsky had an obligation under Section 329 and the Bankruptcy Rules to disclose the receipt of prepetition payments from the Bartmanns and that his failure to disclose the payments justifies the imposition of an order requiring Mr. Modovsky to disgorge all undisclosed fees. Mr. Modovsky contends that Section 329 only requires disclosure of "compensation paid or agreed to be paid ... for services rendered or to be rendered in contemplation of or in connection with the case" and that the compensation he received was not in contemplation of or in connection with the Bartmanns' bankruptcy case.

The Trustee and Mr. Modovsky disagree as to the appropriate standard under which the Court should judge whether

compensation was paid in contemplation of or in connection with the bankruptcy case. Mr. Modovsky contends that the Court must consider whether the Bartmanns retained and paid Mr. Modovsky *with the subjective intent and for the purpose of* filing bankruptcy. The Trustee contends that the phrase is accorded broad interpretation and includes compensation for services rendered in connection with litigation with creditors whose debts eventually influenced the debtor to file bankruptcy. The Trustee argues that pursuant to the Invoice, the majority of prepetition services rendered by Mr. Modovsky related to modifying, appealing and avoiding execution of the CFS Judgment. Because the CFS Judgment was the precipitating cause of the Bartmanns' bankruptcy, the Trustee asserts, the compensation paid for these services was sufficiently connected to the bankruptcy to require disclosure and examination under Section 329.

In support of his argument that the prepetition transfers to him were not made in contemplation of bankruptcy or in connection with the case, Mr. Modovsky represents in his Objection that the Bartmanns terminated their relationship with the Hall Estill firm because those attorneys suggested that the Bartmanns file bankruptcy to avoid the consequences of the CFS Judgment and that Mr. Bartmann adamantly believed he would prevail on the appeal of the CFS Judgment. Objection at 1–2, ¶ 5 and at 10. Neither of the Bartmanns were present at the hearing or testified as to their intent, however. Therefore, to the extent that the Court is limited to examining the state of mind of the Bartmanns when they entered into the transaction with Mr. Modovsky, as urged by Mr. Modovsky, and determining whether "the thought of bankruptcy was the impelling cause of the transaction" (Objection at 8, *quoting In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 573–74 (Bankr. Utah 1985)), Mr. Modovsky failed to produce any credible evidence of the Bartmanns' subjective beliefs or thoughts.

There is substantial circumstantial evidence, however, that "the thought of bankruptcy *was* the impelling cause" of the Bartmanns' transaction with Mr. Modovsky. The United States Supreme Court announced the "impelling cause" standard in a 1933 case interpreting Section 60(d) of the Bankruptcy Act. *See In re Mayeaux*, 269 B.R. 614, 622–23 (Bankr.E.D.Tex. 2001),[16] *citing Conrad, Rubin & Lesser v.*

---

**16.** The facts in *Mayeaux* are strikingly similar to the set of facts before this Court. In *Mayeaux*, debtor's counsel received fees of $7,000 within the six weeks prior to debtor's bankruptcy filing and $3,000 postpetition but failed to disclose the payments in his Rule 2016 statement, claiming that the fees were not paid in connection with the bankruptcy case because he and the debtor did not discuss bankruptcy options until immediately prior to filing the case. Also, notwithstanding that the prepetition transfers were made within six weeks of bankruptcy, the payments were not disclosed as required in the debtor's statement of financial affairs either. Only after the United States Trustee inquired into the matter did counsel attempt to account for the payment of the undisclosed sums.

With respect to whether the compensation was paid in contemplation of or in connection with the bankruptcy case, the court concluded that the counsel was retained "with the expressed hope of avoiding the litigation of claims" of the debtor's largest creditor and that the failure of negotiations and avoidance tactics resulted in the commencement of a civil action by the creditor, which caused the debtor to file bankruptcy. The court concluded that counsel's services during the six week prepetition period were "in contemplation of or in connection with" the bankruptcy case which imposed a duty upon counsel pursuant to Section 329 to disclose all compensation paid for such services. *Mayeaux*, 269 B.R. at 624–25.

The court further concluded that counsel's acceptance of postpetition compensation from

*Pender,* 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933). Section 60(d) of the Bankruptcy Act provided that a court was empowered to reexamine the reasonableness of transfers of money or property to a debtor's counsel that were made "in contemplation of the filing of a petition." The *Mayeaux* court concluded that the "impelling cause" standard articulated in the *Conrad* case could be satisfied even if counsel was not originally retained to provide bankruptcy-related services, however. *Mayeaux,* 269 B.R. at 623. In *Conrad,* the Supreme Court concluded that attorneys engaged for the purpose of negotiating with creditors to restructure or defer debt in an effort to avoid bankruptcy had been retained "in contemplation of bankruptcy" and thus the attorneys were required to disclose their prepetition compensation. *Id., quoting Conrad,* 289 U.S. at 476–78, 53 S.Ct. 703 ("negotiations to prevent bankruptcy may demonstrate that the thought of bankruptcy was the impelling cause of the payment. 'A man is usually very much in contemplation of a result which he employs counsel to avoid.'"); *In re Greco,* 246 B.R. 226, 231 (Bankr.E.D.Pa.2000) ("Services devoted to the prevention of bankruptcy, such as to effect a settlement or to determine the continued viability of a company, may also be subject to the provisions of section 329 once a bankruptcy case is commenced."); and 3 COLLIER ON BANKRUPTCY ¶ 329.03[1][d] (15th ed. rev.2001) ("the payment of fees on the eve of bankruptcy, related to the attorneys' action to obtain a moratorium from the state on certain obligations of the debtor to make refunds to investors, has been held to have

been made in the contemplation of bankruptcy and reviewable by the court"). *See also Arens v. Boughton (In re Prudhomme),* 43 F.3d 1000, 1004 (5th Cir.1995) (fees paid to counsel to attempt to resolve disputes or restructure debt with their largest creditor were paid "in contemplation of bankruptcy").

In addition, courts have concluded that because of the tendency of a financially distressed debtor to heavily depend upon and therefore prefer (in a financial sense) its attorneys, counsel has a duty to disclose compensation paid by a debtor for *any legal services* performed at the time the debtor believed a bankruptcy filing was possible, regardless of the nature of the services. *See In re Keller Financial Services of Florida, Inc.,* 248 B.R. 859, 878–79 (Bankr.M.D.Fla.2000), *citing In re Rheuban,* 121 B.R. 368, 378 (Bankr. C.D.Cal.1990). Thus, courts are authorized to scrutinize *all payments* made to attorneys while bankruptcy is imminent for signs of preference, collusion, overreaching or concealment.

Upon consideration of the type of services Mr. Modovsky rendered to the Bartmanns on the eve of bankruptcy, the amount and timing of the payments, and Mr. Modovsky's admissions,[17] the Court finds that the Bartmanns retained Mr. Modovsky primarily in an effort to avoid execution of the CFS Judgment, which constituted their largest liquidated debt, and thus avoid bankruptcy. Mr. Modovsky was initially retained to appeal the CFS Judgment. Shortly thereafter, the Bartmanns were served with the Orders to

---

the debtor without filing a fee application or obtaining court approval was "inexcusable" and "a serious breach of the obligations imposed upon him by the Bankruptcy Code and Rules," and, in any event, should have been disclosed under Section 329. *Id.* at 626–27.

**17.** Objection to Trustee's Motion at 10 (Mr. Modovsky stated, in argument, that Mr. Bartmann "made clear to Modovsky that his primary and overriding priority was the appeal of the adversary proceeding.... It is that appeal that impelled the Bartmanns to retain Modovsky.")

Appear and the Injunction and thus the Bartmanns and Mr. Modovsky were on notice that CFS intended to execute on the Judgment forthwith. On August 20 and 21, 2003, Mr. Modovsky demanded and Mr. Bartmann paid Mr. Modovsky a total of $14,000. On August 22, 2003, Mr. Modovsky filed an Emergency Motion for Stay Without Bond Pending Appeal, requesting that the Court stay CFS from executing on the Judgment until the Bartmanns' appeal was resolved. On August 23 and 24, 2003, Mr. Modovsky "prepared Chapter 11 documents." On August 26, 2003, Mr. Modovsky demanded and obtained from Mrs. Bartmann an additional $14,000. On August 27, 2003, after Mr. Modovsky's efforts to stay execution of the Judgment failed, and soon after the commencement of an examination of Mrs. Bartmann regarding assets that might be available to satisfy the Judgment, the Bartmanns filed bankruptcy. The Court concludes that Mr. Modovsky received $28,000 in compensation for services rendered in contemplation of bankruptcy as that phrase has been construed by the United States Supreme Court.

■ Courts draw a distinction between services rendered "in contemplation of bankruptcy" and those rendered "in connection with" the bankruptcy case. *See Mayeaux*, 269 B.R. at 622–24; *Keller Financial Services*, 248 B.R. at 877–79. While Section 60(b) of the Bankruptcy Act permitted court review of prepetition transactions between attorney and the debtor for services rendered "in contemplation of" bankruptcy, Section 329 of the Bankruptcy Code authorizes courts to re-examine the propriety of transfers made to debtor's counsel for services rendered not only "in contemplation of bankruptcy" but also "in connection with the case." Thus the early Supreme Court case does not address the meaning of "in connection with

the case" and the Court must assume that by adding "in connection with the case" to the statute, Congress intended to broaden the scope of disclosure to transactions beyond those that were made "in contemplation of" filing bankruptcy.

■ When considering whether legal services were rendered "in connection with" a bankruptcy case—

a more objective standard applies. If it can be objectively determined that the services rendered or to be rendered by the attorney have or will have an impact on the bankruptcy case, then such services are deemed to have been rendered in connection with the bankruptcy case and the attorney has a duty to disclose any compensation received or to be received for such services. *Keller Fin. Serv.*, 248 B.R. at 879; *see also Cohn v. U.S. Trustee (In re Ostas)*, 158 B.R. 312, 321 (N.D.N.Y.1993) ["The phrase ('in connection with') may include services related to precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy."]

*Mayeaux*, 269 B.R. at 623. *See also In re Campbell*, 259 B.R. 615, 626 (Bankr. N.D.Ohio 2001); *Keller Financial Services*, 248 B.R. at 878–79.

The CFS Judgment and CFS's pursuit of collection on its Judgment was the precipitating cause of the bankruptcy and Mr. Modovsky was primarily retained, and paid, to modify, appeal and avoid collection on the Judgment. Such services had or intended to have an obvious impact on the Bartmanns' estate—if the Judgment was avoided or reversed, the estate would be enriched and other parties in interest would reap the benefit.

Under both clauses of Section 329, Mr. Modovsky had an obligation to disclose compensation he received from the Bart-

manns.[18] In his Disclosure, however, Mr. Modovsky represented that he received "$0" "for services rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case." Trustee Exhibit 2. In his Affidavit, Mr. Modovsky falsely states that "[p]rior to the commencement of this case on August 27, 2004, the Firm has not received payment from the Debtor for legal services rendered prepetition to the Debtor in this case and pertaining to this case." Trustee Exhibit 3, ¶ 8.

█ Further, regardless of whether the payments to Mr. Modovsky were made in contemplation of filing bankruptcy or in connection with the bankruptcy, the details of Mr. Modovsky's transactions with the Bartmanns should have been revealed in his Disclosure and Affidavit pursuant to Section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 in order to permit the Court and parties in interest to assess whether Mr. Modovsky was eligible to represent the estate. Upon review of Mr. Modovsky's belated disclosure of his prepetition representation of the Bartmanns and compensation paid therefor, which, the Court notes, was not made in compliance with the Code and Rules, but rather was grudgingly produced solely in response to demands by the Trustee, the Court concludes that Mr. Modovsky was not disinterested and was not eligible at any time to represent the debtors in possession or the estate.

█ For instance, on the Petition Date, Mr. Modovsky possessed property of the estate. The Bartmanns paid Mr. Modovsky $38,000 prepetition. If the Court were to assume that the Invoice constitutes an accurate depiction of services rendered prepetition and that it applies a reasonable hourly rate to such services, the Invoice demonstrates that Mr. Modovsky had earned only $28,725 of the $38,000 paid to him as of the Petition Date. Thus although according to his own records Mr. Modovsky possessed $9,275 which he had not yet earned on the Petition Date, he represented in his Disclosure that he had been paid "$0" for services *to be* rendered in the bankruptcy case, Trustee Exhibit 2, and in his Affidavit, he falsely represents that "Stephen J. Modovsky has not been paid a retainer for services to be rendered in this case." Trustee Exhibit 3, ¶ 8. Mr. Modovsky's possession of unearned funds as of the Petition Date, which constituted property of the estate, was a connection to the debtors that was relevant to the Court's consideration of whether Mr. Modovsky was qualified under Section 327(a) to be employed as counsel to the debtors in possession. *See Arens v. Boughton (In re Prudhomme)*, 43 F.3d 1000, 1004 (5th Cir. 1995) (unearned retainer was property of estate). Thus, the *retainer* should have been disclosed in the Affidavit that was submitted in support of Mr. Modovsky's employment application. *See, e.g., Arens*, 43 F.3d at 1004; *In re Saturley*, 131 B.R. 509, 516–17 (Bankr.D.Me.1991).

█ Even more egregious than the nondisclosure of the retainer, however, is Mr. Modovsky's failure to reveal that he *applied* the retainer to compensate himself for postpetition services, even though he had never been approved as counsel for the debtors in possession under Section

---

18. Even under Mr. Modovsky's restricted interpretation, Section 329 and Bankruptcy Rule 2016 required Mr. Modovsky to disclose compensation of $2,175 that he received for services rendered on August 23 and 24, 2003 for "Research[ing] Category VIII" and "Prepar[ing] Chapter 11 Documents" as well the amount he received for services rendered for "prepar[ation of] documents" on the Petition Date. These services were clearly rendered in contemplation of the Bartmanns' bankruptcy.

327 of the Bankruptcy Code nor had he ever filed an application for approval of compensation for such postpetition services under Section 330 or 331 of the Bankruptcy Code. *See Arens,* 43 F.3d at 1004 (unless bankruptcy court approves payment of postpetition compensation from unearned prepetition retainer, it must be disgorged).

Finally and significantly, it was incumbent upon Mr. Modovsky, pursuant to Bankruptcy Rule 2014, to disclose that because one or more of the checks he received from the Bartmanns were not paid until after the Petition Date, he received *postpetition* transfers of estate funds, a condition that created a disqualifying conflict of interest that precluded him from representing the debtors in possession unless and until he restored the funds to the estate. *See also Franke v. Tiffany (In re Lewis),* 113 F.3d 1040, 1045 (9th Cir.1997) (Section 329 and Bankruptcy Rule 2016 require disclosure of compensation received postpetition). Mr. Modovsky's Affidavit was silent as to the receipt of *any* funds from the Bartmanns, pre or post petition. Instead, Mr. Modovsky represented that "[t]o the best of my knowledge, the undersigned attorney and another person of the Firm are disinterested as that term is defined in the Bankruptcy Code in that they ... do not have interests adverse to the interests of this estate or any class of creditors or equity security holders...." Affidavit at ¶ 3, Trustee Exhibit 3.[19]

"The process of review [of attorneys' prepetition transactions with a debtor] is absolutely dependent upon full, complete and absolute compliance with the disclosure requirements by a debtor's attorney.... When an attorney unilaterally elects to conceal the existence of payments that might otherwise be subjected to examination by creditors and the court, the entire compensation review process is derailed and public confidence in the system is damaged." *Mayeaux,* 269 B.R. at 621–22 (citations and quotations omitted). *See also In re Woodward,* 229 B.R. 468, 475 (Bankr.N.D.Okla.1999). Thus, in addition to denying or terminating the employment of counsel guilty of failing to make required disclosures of connections, adverse interests, potential conflicts, and fee agreements and compensation, courts have also ordered disgorgement of undisclosed fees and retainers. *See Henderson v. Kisseberth (In re Kisseberth),* 273 F.3d 714, 720–21 (6th Cir.2001), *opinion clarified by* 24 Fed.Appx. 539, 2002 WL 59617 (failure to disclose receipt of pre and postpetition compensation justifies disgorgement of undisclosed fees); *Franke v. Tiffany (In re Lewis),* 113 F.3d 1040, 1045 (9th Cir.1997) ("attorney's failure to obey the disclosure and reporting requirements of the Bankruptcy Code and Rules gives the bankruptcy court discretion to order disgorgement of attorney's fees"); *Arens v. Boughton (In re Prudhomme),* 43 F.3d 1000, 1003–04 (5th Cir.1995) (affirming disgorgement of undisclosed prepetition retainer, stating that court's "broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondis-

---

**19.** Although Mr. Modovsky cannot be held directly responsible for the representations made by the Bartmanns on their Schedules and SOFA because those documents are not signed by Mr. Modovsky, the Court notes that Mr. Modovsky's duties as proposed counsel to debtors in possession included providing competent advice to the Bartmanns concerning their obligation to disclose their transactions with Mr. Modovsky in various paragraphs of the SOFA. Apparently Mr. Modovsky also failed to advise the Bartmanns that their transfers to him were reportable on their SOFA.

closure"); *Miller v. United States Trustee (In re Independent Engineering Co.)*, 232 B.R. 529, 532 (1st Cir. BAP), *aff'd,* 197 F.3d 13 (1st Cir.1999) (failure to disclose postpetition draws on prepetition retainer, standing alone, justified disqualification of attorney for debtor in possession and order of disgorgement of all fees); *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 849 (10th Cir. BAP 1997) ("even a negligent or inadvertent failure to disclose the retainer is sufficient to deny fees"); *Hale v. United States Trustee (In re Basham)*, 208 B.R. 926, 931 (9th Cir. BAP 1997); *Mayeaux*, 269 B.R. at 622 ("failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, and by implication review by the Court, is a basis for entry of an order denying compensation and requiring the return of sums already paid"); *In re Campbell*, 259 B.R. 615, 627–29 (Bankr.N.D.Ohio 2001) (sanction for failure to disclose postpetition fee agreement and receipt of compensation postpetition was cancellation of fee agreement, disgorgement of all fees received and bar from collecting further fees); *Keller Financial Services*, 248 B.R. at 885–86 (sanction for failure to disclose full amount of bankruptcy retainer was disgorgement of entire amount of retainer, not just undisclosed portion); *Woodward*, 229 B.R. at 475, *citing In re Investment Bankers, Inc.*, 4 F.3d 1556,1565 (10th Cir.1993) (requiring disgorgement of undisclosed fee). "The fact that the fee may or may not have been reasonable or have been earned does not justify a disregard for the rules of disclosure." *Woodward*, 229 B.R. at 475.

The Court concludes that Mr. Modovsky's complete disregard for the disclosure requirements of Sections 327 and 329 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 and the audacious lack of candor reflected in his Disclosure and Affidavit justify the entry of an order requiring him to disgorge undisclosed compensation in the amount of $28,000.[20]

### C. *Reasonableness of prepetition transaction with debtors*

 As an alternative basis for disgorgement, the Trustee contends that the amount of compensation Mr. Modovsky received from the Bartmanns exceeded the reasonable value of services provided. Section 329 of the Bankruptcy Code states—

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

---

**20.** Although the Court has discretion to require disgorgement of all undisclosed compensation, the Court notes that the Trustee requested only that $28,000 be returned to the estate.

(2) the entity that made such payment.

11 U.S.C. § 329. Bankruptcy Rule 2017 implements Section 329 as follows—

On motion by any party in interest ..., the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly, and in contemplation of the filing of a petition under the Code by or against the debtor ... to an attorney for services rendered or to be rendered is excessive.

Fed. R. Bankr.P.2017. "The obvious purpose of [Section 329 and Rule 2016(b)] is to enable the creditors to review the debtor's transactions with his attorneys and to seek, if necessary, the return of excessive payments made by a desperate debtor to an attorney on the eve of bankruptcy." *In re Meyer*, 50 B.R. 3, 4 (Bankr.S.D.Fla. 1985).

Courts have long recognized that the debtor is in a vulnerable position and is highly dependent on its attorney and therefore will be reluctant to object to the fees of the attorney. The purpose of this process is to prevent overreaching by an attorney and provide protection for creditors. 3 *Collier on Bankruptcy* ¶ 329.01 (Lawrence P. King ed., 15th ed. rev.1997); *see also In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3rd Cir.1994) ("Disagreeable as the chore may be, the bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors."); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 668 (4th Cir.1989) (noting that legislative history states that the purpose of § 329 is to protect creditors and debtor from overreaching by attorneys); *Land v. First Nat'l Bank (In re Land)*, 116 B.R. 798, 804 (D.Colo.1990) (citing legislative history and noting that serious potential for overreaching by debtor's attorney should be subject to careful scrutiny), *aff'd & remanded*, 943 F.2d 1265 (10th Cir.1991).

*Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848 (10th Cir. BAP 1997). "Compensation to a debtor's counsel may be considered excessive for a number of reasons including the size of the fee, the nature of the services provided, failure to disclose the information required by Rule 2016(b), unethical conduct or other causes." *In re Martin*, 197 B.R. 120, 125 (Bankr.D.Colo. 1996), *citing Quiat v. Berger (In re Vann)*, 136 B.R. 863 (D.Colo.1992); *In re Land*, 943 F.2d 1265 (10th Cir.1991).

■ Mr. Modovsky has the burden of proving the reasonable value of services rendered. *See In re Geraci*, 138 F.3d 314, 318 (7th Cir.1998). In addressing whether Mr. Modovsky's prepetition compensation was reasonable in relation to the services rendered, the Court accords scant credibility to the Invoice. Mr. Modovsky required several months to prepare the four page Invoice covering a relatively short time period—July 15, 2003 through September 18, 2003. The Invoice was not submitted to the Trustee until March 2004. The Invoice lacks detail. These factors lead the Court to conclude that Mr. Modovsky did not maintain contemporaneous time records of his services, but instead attempted to recreate an accounting of his time solely in response to the Trustee's request. It does not appear that Mr. Modovsky ever presented a statement accounting for his time to the Bartmanns prior to charging or accepting fees from them or prior to taking such fees into income. Thus, the Invoice is unreliable as evidence of actual services performed. From the record, the Court is familiar with the pleadings filed by Mr. Modovsky during the period re-

flected by the Invoice that were related to the appeal of the CFS Judgment and efforts to stay the execution of the CFS Judgment, however.

■ Clearly, because Mr. Modovsky's employment by the Bartmanns, as debtors in possession, was never approved by the Court pursuant to 11 U.S.C. § 327, Mr. Modovsky is not entitled to compensation for services rendered postpetition. *See Interwest Business Equipment, Inc. v. United States Trustee (In re Interwest Business Equipment, Inc.)*, 23 F.3d 311, 318 (10th Cir.1994). Thus, even if the Court deemed the Invoice an accurate depiction of services rendered prepetition, and if the Court approved Mr. Modovsky's hourly rate, the Invoice only supports prepetition fees in the amount of $28,725. The Bartmanns' payment of $38,000 for those services is patently unreasonable. Thus, at the very least, $9,275 of the $38,000 must be considered excessive compensation under 11 U.S.C. § 329 and that amount must be returned to the estate. *See, e.g., Keller Financial Services*, 248 B.R. at 905. Whether $28,725 constitutes the reasonable value of Mr. Modovsky's prepetition services is determined below.

■ "Under [Section] 329, ethical conflicts can diminish the value of services to a client, making the fee charged 'excessive.'" *In re Martin*, 197 B.R. 120, 127 (Bankr.D.Colo.1996) (collecting cases). The consequences of representing a debtor while laboring under a conflict of interest range from partial to complete denial of compensation. *See, e.g., Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 850 (10th Cir. BAP 1997) (accepting retainer derived from cash collateral pledged to creditor created conflict of interest between debtor's counsel and creditor which justified denial of compensation); *Martin*, 197 B.R. at 128 ("[a]n actual conflict of interest can justify

total disallowance of fees, cancellation of a fee agreement, or a court can determine the effect of the conflict of interest and deny fees in proportion to the scope of the conflict.").

Here, Mr. Modovsky's representation of the Bartmanns, both pre and post petition, was tainted with conflicting self-interest. First, Mr. Modovsky induced the Bartmanns to transfer funds to himself in violation of a court order. On the Petition Date, Mr. Modovsky failed to advise the Bartmanns to immediately transfer estate funds into debtor in possession accounts; this oversight resulted in payments being made to Mr. Modovsky with estate funds. Finally, contrary to the interests of the bankruptcy estate which Mr. Modovsky purported to represent, Mr. Modovsky failed and refused to return those funds to the estate. In these three instances at least, Mr. Modovsky's self-interest was directly adverse to the interests of the Bartmanns prepetition and the estate postpetition and demonstratively impaired his representation of the Bartmanns and the estate. A skilled, experienced and competent lawyer would have recognized the impact of his personal financial interests on his representation of his clients and on the integrity of the estate. Thus, the Court finds that the quality of Mr. Modovsky's representation of the Bartmanns was generally unsatisfactory.

On the other hand, Mr. Modovsky did file a notice of appeal of the CFS Judgment and other preliminary appeal-related pleadings and appeared at three hearings prepetition (an undefined federal court hearing, a hearing before this Court on the Emergency Motion to stay execution of the CFS Judgment, and the asset hearing). The Court concludes that the Bartmanns' initial transfer of $10,000 to Mr. Modovsky, which the Trustee does not contest, is more than sufficient to compensate Mr. Modovsky for services he claims to have

rendered to the Bartmanns between July 15, 2003 (according to the Invoice, the first date on which Mr. Modovsky rendered services) and August 27, 2003 (the Petition Date). The remainder must be disgorged as unreasonable.

### D. *Summary of Order of Disgorgement*

For several alternative reasons, the Court concludes that $28,000 of the $38,000 paid to Mr. Modovsky by the Bartmanns must be disgorged to the estate. Fees in the amount of $28,000 that were transferred to Mr. Modovsky in violation of the Injunction must be returned to the estate. Alternatively, because Mr. Modovsky did not disclose the Bartmanns' prepetition payment of fees or his postpetition receipt of fees in violation of multiple sections of the Bankruptcy Code and Bankruptcy Rules, such fees should be disgorged such fees as a sanction. Alternatively, fees paid for prepetition services in excess of what the Court has determined is reasonable considering the scope of services rendered, the skill and experience of counsel, and the layers of conflicts infecting the representation, may be recovered by the Trustee. Thus, compensation in excess of $10,000 must be disgorged pursuant to Section 329. Finally, fees paid but unearned as of the Petition Date, which, by Mr. Modovsky's calculations total $9,275.00, are recoverable by the Trustee as property of the estate. This amount is included in the $28,000 total that must be disgorged.

### E. *Request for Disqualification as Counsel for Debtor*

On May 11, 2004, Mr. Modovsky filed an Application to Withdraw from representing the Bartmanns. The Court granted the application on May 14, 2004. Thus, the Trustee's request for disqualification of Mr. Modovsky as counsel for the debtors is moot. To the extent that the Trustee seeks an order precluding Mr. Modovsky from asserting a claim against the estate for compensation, the Court notes that the Court never authorized the employment of Mr. Modovsky as counsel for debtors in possession pursuant to 11 U.S.C. § 327 during the Chapter 11 phase of this case and Mr. Modovsky's request to be employed was stricken. Nor did the Court authorize the Trustee to employ Mr. Modovsky to assist him after the case was converted to Chapter 7. Only professionals whose employment has been authorized pursuant to 11 U.S.C. § 327 or 1103 may be awarded compensation from the estate. *See* 11 U.S.C. § 330; *Keller Financial Services,* 248 B.R. at 891.

### V. Conclusion

For the reasons stated herein, to the extent that the Trustee requests that Mr. Modovsky disgorge $28,000, the Trustee's Motion is granted. Mr. Modovsky is ordered to disgorge $28,000 to the Trustee within sixty (60) days hereof. The Trustee's request to disqualify Mr. Modovsky as counsel for debtors is denied as moot.