**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 16 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SHIRLEY A. JONES, MEGA-
UNIVERSAL OXYGEN AND HOME
CARE SERVICES, INC.,

      Defendants-Appellants.

-------------------------------------------------

NATIONAL ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS,

      Amicus Curiae.

Nos. 98-2131, 98-2133

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-98-251-MV)**

---

John D. Cline (Nancy Hollander with him on the briefs), Freedman, Boyd, Daniels, Hollander, Guttmann & Goldberg, P.A., Albuquerque, New Mexico, for Defendant-Appellant Shirley A. Jones.

Richard C. Minzner, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, on the briefs for Defendant-Appellant Mega-Universal Oxygen and Home Care Services, Inc.

Stephen R. Kotz, Assistant U.S. Attorney (John J. Kelly, United States Attorney, and

Mary L. Higgins, Assistant U.S. Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Graeme W. Bush and Nathan D. Finch, Caplin & Drysdale, CHTD, Washington, D. C.; and Barbara Bergman, University of New Mexico, UNM School of Law, Albuquerque, New Mexico, on the brief for Amicus Curiae.

---

Before **SEYMOUR**, Chief Judge; **PORFILIO** and **BRORBY**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

In these consolidated appeals we consider whether due process requires a district court to conduct a post-restraint, pre-trial adversarial hearing before continuing to freeze assets that a defendant allegedly needs for legal and living expenses. The federal criminal forfeiture statutes serve as our backdrop. We conclude that due process may require such a hearing if certain conditions are present.

**I**

The circumstances leading to the present appeals stem from an indictment returned against Mega-Universal Oxygen & Home Care Services, Inc., a corporation that provides medical supplies and services, and Shirley Jones, its president and majority shareholder.

Defendants are charged with, among other things, submitting false claims for Medicaid disbursement in violation of the health care fraud statute. 18 U.S.C. § 1347. In a separate count in the indictment, the grand jury also alleged that certain real and personal properties are subject to forfeiture under 18 U.S.C. § 982(a)(6)[1] as constituting or having been derived from gross proceeds traceable to the health care fraud offense.

After the indictment issued, the government moved *ex parte* under 21 U.S.C. § 853(e)(1)(A) to freeze some of the forfeitable assets pending trial. The district court granted the government's request and restrained over $1.5 million of defendants' assets. Defendants moved for a post-restraint, pre-trial hearing under ***United States v. Monsanto*** to challenge the restraint and to obtain release of the assets for legal and living expenses. 924 F.2d 1186 (2d Cir.) (en banc), *cert. denied*, 502 U.S. 943, 112 S. Ct. 382, 116 L. Ed. 2d 333 (1991). They argued that the Due Process Clause of the Fifth Amendment requires a pre-trial hearing at which the government must establish probable cause to believe defendants committed health care fraud and the assets named in the indictment are traceable to the offense.

The district court rejected that argument and concluded that section 853(e)(1)(A) did not permit, and procedural due process did not require, a post-restraint, pre-trial

---

[1] Section 982(a)(6) provides: "The court, in imposing sentence on a person convicted of a Federal health care offense, shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." 18 U.S.C. § 982(a)(6) (Supp. II 1996).

adversarial hearing. The court denied the motions and declined to release the restrained funds for any purpose. Defendants obtained a stay of the proceedings and timely appealed. Our jurisdiction arises under the collateral order doctrine. *United States v. Musson*, 802 F.2d 384, 385 (10th Cir. 1986).

## II

Before inquiring into the applicability of the Fifth Amendment to this case, we must first determine whether there is a reasonable construction of section 853(e)(1)(A) that would avoid the constitutional question. *Tull v. United States*, 481 U.S. 412, 417 n.3, 107 S. Ct. 1831, 1835 n.3, 95 L. Ed. 2d 365 (1987) (courts must avoid deciding cases on constitutional grounds when statutory grounds are available). We review the district court's interpretation of the statute de novo, *Southern Ute Indian Tribe v. Amoco Prod. Co.*, 151 F.3d 1251, 1256 (10th Cir. 1998) (en banc), and conclude that no reasonable construction of section 853(e)(1)(A) permits a post-restraint, pre-trial hearing under the circumstances of this case.

In determining the scope of a statute, we must first look to its language. *United States v. Turkette*, 452 U.S. 576, 580, 101 S. Ct. 2524, 2527, 69 L. Ed. 2d 246 (1981). The language of section 853(e)(1)(A) [2] is inconclusive. Although the statute does not

---

[2] Section 853(e)(1)(A), which is applicable through 18 U.S.C. § 982(b)(1)(A), provides in pertinent part:

(continued...)

- 4 -

expressly provide for a post-restraint hearing, it does not prohibit one, leaving the statute susceptible to more than one reasonable interpretation. "In some cases, Congress intends silence to rule out a particular statutory application, while in others Congress' silence signifies merely an expectation that nothing more need be said in order to effectuate the relevant legislative objective." ***Burns v. United States***, 501 U.S. 129, 136, 111 S. Ct. 2182, 2186, 115 L. Ed. 2d 123 (1991).

Congress' omission need not detain us long, however, because the legislative history provides the answer:

> [The post-indictment restraining order] provision does not exclude . . . the authority to hold a hearing subsequent to the initial entry of the order and the court may at that time modify the order or vacate an order that was clearly improper (*e.g.*, where information presented at the hearing shows that the property restrained was not among the property named in the indictment). *However, it is stressed that at such a hearing the court is not to entertain challenges to the validity of the indictment. For the purposes of issuing a restraining order, the probable cause established in the indictment or information is to be determinative of any issue regarding the merits of the government's case on which the forfeiture is to be based.*

---

[2](...continued)
(e) Protective orders

   (1) Upon application of the United States, the court may enter a restraining order or injunction . . . or take any other action to preserve the availability of property described in [18 U.S.C. § 982(a)(6)] for forfeiture under this section–

   (A) upon the filing of an indictment or information charging a violation . . . for which criminal forfeiture may be ordered . . . and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section . . . .

21 U.S.C. § 853(e)(1)(A) (1994).

S. Rep. No. 98-225, at 203, 213 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3386, 3396 (emphasis added). Although the legislative history suggests that a post-restraint hearing may sometimes be proper, it clearly prohibits the sort of inquiry sought by defendants here. A court may not revisit any matter to which probable cause is established in the indictment.

A defendant's probable guilt on the underlying offense is of course a matter subject to the grand jury's determination and is inherent in the indictment. It is seldom reviewed before trial because we presume the grand jury has faithfully performed the duties assigned to it. *Hamling v. United States*, 418 U.S. 87, 139 n.23, 94 S. Ct. 2887, 2918 n.23, 41 L. Ed. 2d 590 (1974). And despite the fact that criminal forfeiture is ordinarily not a part of the substantive offense, but is instead a part of the sentence, *Libretti v. United States*, 516 U.S. 29, 40, 116 S. Ct. 356, 363, 133 L. Ed. 2d 271 (1995) (interpreting 21 U.S.C. § 853); *United States v. Bornfield*, 145 F.3d 1123, 1138 n.12 (10th Cir. 1998) (interpreting 18 U.S.C. § 982), a grand jury is necessarily called upon in this context to find probable cause to believe the assets named in the indictment are traceable to the underlying offense. *Musson*, 802 F.2d at 387; *United States v. Nichols*, 841 F.2d 1485, 1505 (10th Cir. 1988).

For these reasons, we hold that issues of underlying guilt and forfeitability of assets are beyond purview under the statute. *Accord United States v. Real Property in Waterboro*, 64 F.3d 752, 756 (1st Cir. 1995); *Monsanto*, 924 F.2d at 1203-04 (Oakes, J.,

- 6 -

concurring); *id.* at 1206-07 (Cardamone, J., dissenting); *United States v. Moya-Gomez*, 860 F.2d 706, 728 (7th Cir. 1988), *cert. denied*, 492 U.S. 908, 109 S. Ct. 3221, 106 L. Ed. 2d 571 (1989). That having been said, we next address whether due process nevertheless requires a pre-trial hearing at which defendants may challenge the grand jury's findings.

**III**

The procedural aspect of the Fifth Amendment Due Process Clause guarantees that government action may not deprive a person of life, liberty or property unless the government affords a fair procedure to contest the deprivation. U.S. Const. amend. V. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965). We review de novo the extent of constitutional rights and their effect on federal statutes. *United States v. Hampshire*, 95 F.3d 999, 1001 (10th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 753, 136 L. Ed. 2d 690 (1997).

Both parties recognize that a restraining order issued under section 853(e)(1)(A) deprives one of property even though the assets named in the indictment are only frozen and may eventually be returned. *Monsanto*, 924 F.2d at 1192; *Moya-Gomez*, 860 F.2d at 725-26. The parties part ways, however, on what process is due when assets are restrained under the statute. Defendants suggest that due process requires a post-restraint,

pre-trial adversarial hearing at which the government has the burden of establishing probable cause to believe that defendants committed the health care offenses and the funds subject to restraint are traceable to those offenses. The government contends the grand jury's determination of probable cause and the subsequent trial on the merits are all the process the Constitution requires. Although we ultimately agree with defendants, we temper our conclusion with qualifications.

To determine whether due process requires some form of a post-restraint, pre-trial hearing we consider the private interest affected by the restraint; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of an adversarial hearing; and the government's interest, including the administrative burden that an adversarial hearing would impose. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53, 114 S. Ct. 492, 501, 126 L. Ed. 2d 490 (1993) (applying *Mathews* in civil forfeiture context); *Monsanto*, 924 F.2d at 1193 (applying *Mathews* in criminal forfeiture context); *Moya-Gomez*, 860 F.2d at 726 (same).[3] Ultimately, "due

---

[3] Citing *United States v. $8,850 in United States Currency*, 461 U.S. 555, 103 S. Ct. 2005, 76 L. Ed. 2d 143 (1983), the government urges us instead to consider the length of the delay between the initial restraint and trial on the merits, the reason for the delay, defendants' assertion of their rights, and whether the delay prejudiced defendants. We decline to do so. The due process issue raised in *$8,850* was a "narrow one," *id.* at 562, 103 S. Ct. at 2010, rooted in claims of government dilatoriness, *id.* at 561, 103 S. Ct. 2010. Defendants here complain that the statutory scheme deprives them of a property interest without due process, not that dilatory conduct on the part of the government has deprived them of the right to a hearing at a meaningful time. Moreover, given the

(continued...)

- 8 -

process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972).

The private interests raised in this case are important. Defendants' qualified right to counsel of choice is an essential component of the Sixth Amendment right to counsel. It "stems from a defendant's right to decide what kind of defense he wishes to present," *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990), *cert. denied*, 500 U.S. 920, 111 S. Ct. 2022, 114 L. Ed. 2d 108 (1991), for the selection of one attorney over another can profoundly affect the course and outcome of trial, *Nichols*, 841 F.2d at 1502. To improperly impede this interest would likely work a permanent deprivation on a defendant–a defendant "needs the attorney *now* if the attorney is to do him any good." *Moya-Gomez*, 860 F.2d at 726; *accord* **United States v. Michelle's Lounge**, 39 F.3d 684, 697-98 (7th Cir. 1995); *Monsanto*, 924 F.2d at 1193. Also of paramount importance is Ms. Jones' interest in paying for ordinary and necessary living expenses (food, shelter, and the like) until the conclusion of her trial. *United States v. Harvey*, 814 F.2d 905, 928 (4th Cir. 1987), *rev'd en banc on other grounds*, 837 F.2d 637 (4th Cir. 1988), *aff'd* **Caplin & Drysdale, Chartered v. United States**, 491 U.S. 617, 109 S. Ct. 2646, 105 L.

---

[3](...continued)
procedural posture of this case, we find the *$8,850* approach unworkable. Defendants' case is before us on interlocutory appeal, placed in a state of suspended animation at an early stage of the district court proceedings. There is no trial date to speak of and no delay to analyze.

Ed. 2d 528 (1989). A restraining order that prevents a defendant from supporting herself and her family pending and during trial would likely work an injustice with constitutional implications. *United States v. Thier*, 801 F.2d 1463, 1477 (5th Cir. 1986) (Rubin, J, concurring) (suggesting that such a result "shocks the judicial conscience"), *amended by* 809 F.2d 249 (5th Cir. 1987).

The risk of an erroneous deprivation through the procedures afforded in section 853(e)(1)(A) is also significant. Although the statute requires a grand jury to determine that the assets are probably traceable to the underlying offense, the nature of grand jury proceedings makes that finding susceptible to error. A grand jury investigation is not an adversarial process. For all practical purposes the prosecution directs the proceedings, *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430, 103 S. Ct. 3133, 3141, 77 L. Ed. 2d 743 (1983), and potential indictees have no ability to correct inadvertent or deliberate distortions during the grand jury's fact-finding process, *United States v. Williams*, 504 U.S. 36, 47-55, 112 S. Ct. 1735, 1742-46, 118 L. Ed. 2d 352 (1992). "[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170, 71 S. Ct. 624, 647-48, 95 L. Ed. 2d 817 (1951) (Frankfurter, J., concurring).

Because the statute contemplates a trial by jury to test the forfeiture allegations, the government would have us hold that any risk of erroneous deprivation is effectively eliminated. But that cure often comes too late to aid a defendant where complex criminal

cases can take several months or longer to proceed to trial. "And even if the ultimate judicial decision is that the claimant [or defendant] was an innocent owner, or that the Government lacked probable cause, this determination, coming months after the [restraint], 'would not cure the temporary deprivation that an earlier hearing might have prevented.'" *James Daniel*, 510 U.S. at 56, 114 S. Ct. 502 (quoting *Connecticut v. Doehr*, 501 U.S. 1, 15, 111 S. Ct. 2105, 2115, 115 L. Ed. 2d 1 (1991)). An adversarial hearing that occurs shortly after freezing assets would serve to diminish the risk of an erroneous deprivation at a meaningful time. There an impartial judge could weigh and consider each party's case and more reliably determine whether there exists a factual basis for forfeiture. *See McGrath*, 341 U.S. at 171-72, 71 S. Ct. at 649 (Frankfurter, J., concurring) ("No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.").

The government has identified three interests it claims weigh against a post-restraint, pre-trial hearing: preserving forfeitable assets, avoiding premature disclosure of its case, and preservation of prosecutorial resources. There is no question that the first of these concerns weighs heavily in the calculus. "The government certainly has a valid interest in assuring that funds illegally obtained are not laundered or secreted between the time a defendant is indicted and the time when his criminality is determined by actual

- 11 -

conviction." ***Thier***, 801 F.2d at 1475 (Rubin, J., concurring).  This interest was in fact the impetus for the legislation, and we are thus reluctant to dismiss it as insignificant:

> [D]efendants [often] become aware of the government's development of a case against them and as a consequence have both the incentive and opportunity to move to transfer or conceal forfeitable assets . . . .  [¶]  The sole purpose of the bill's restraining order provision . . . is to preserve the status quo, *i.e.*, to assure the availability of the property pending disposition of the criminal case. . . .  In the Committee's view, the availability of restraining orders is essential in the area of criminal forfeiture . . . .

S. Rep. No. 98-225, at 202, 204, 1984 U.S.C.C.A.N. at 3385, 3387.

The government's remaining concerns, however, add little to tip the balance against a pre-trial hearing.  Worries of premature disclosure ring hollow in a system where the government is permitted few surprises.  *See, e.g.*, Fed. R. Crim. P. 16.  To be sure, in some cases early disclosure of witnesses may jeopardize their safety and thus dissuade them from testifying.  S. Rep. No. 98-225, at 203-04, 1984 U.S.C.C.A.N. at 3387-88.  But this does not appear to be one of those cases, and the government has not advanced that position on appeal.  In any event, exempting a post-restraint, pre-trial hearing from the constraints of the Federal Rules of Evidence would permit the government to conceal timid witnesses through the use of hearsay and proffer.  ***Id.***; ***Monsanto***, 924 F.2d at 1198.  We agree in principle with the government's third contention that conserving prosecutorial resources is an important interest.  Every dollar and minute saved not litigating challenges of dubious merit can of course be spent on matters more deserving of attention.  Nevertheless, the government's failure to explicate

the costs it expects to incur at a hearing in this case drains much of this argument's strength.

We think the proper balance of private and government interests requires a post-restraint, pre-trial hearing but only upon a properly supported motion by a defendant. Due process does not automatically require a hearing and a defendant may not simply ask for one. As a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel or provide for herself and her family. *See Nichols*, 841 F.2d at 1506 n.11. The need for this requirement is obvious. If a defendant fails to persuade the court on this point, then the private interest of the *Mathews* calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing. *Harvey*, 814 F.2d at 927. A defendant must also make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets "constitute[] or [are] derived, directly or indirectly, from gross proceeds traceable to the commission of the [health care] offense." 18 U.S.C. § 982(a)(6). By requiring as much from a defendant we protect the government and its resources from frivolous challenges. We stress that although an accused bears the burden of persuasion on the first requirement, the second entails only a burden of production. Once a defendant satisfies these initial burdens, due process requires a district court to conduct an adversarial hearing at which the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense. As we alluded to

before, at this hearing the court may receive and consider evidence and information that would otherwise be inadmissible under the Federal Rules of Evidence.

We do not require, as defendants urge, that the government reestablish probable cause to believe that defendants are guilty of the underlying health care offense. *See Monsanto*, 924 F.2d at 1196-97. This additional burden would add nothing to protect defendants' interests and does more damage than necessary to section 853(e)(1)(A) and the role of the grand jury.

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. . . . An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by a prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more. . . . [¶] Defendants are not entitled . . . to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

*Costello v. United States*, 350 U.S. 359, 363-64, 76 S. Ct. 406, 408-09, 100 L. Ed. 2d 397 (1956) (footnote omitted); *accord United States v. Kilpatrick*, 821 F.2d 1456, 1470 (10th Cir. 1987) ("[T]he district court is prohibited from looking behind the indictment to determine if it was based on inadequate or incompetent evidence."), *aff'd Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988).

By limiting the scope of the post-restraint inquiry to the traceability of the assets, we do not mean, however, to preclude any discussion of the underlying offense. The government may describe and explain the underlying charge, it simply bears no burden of

persuasion on the issue. The district court must take those allegations of the indictment as true and assume at the hearing that the underlying offense has been committed.

**IV**

Our holding today is not at odds with the Supreme Court's decisions in ***Caplin & Drysdale, Chartered v. United States***, 491 U.S. 617, 109 S. Ct. 2646, 105 L. Ed. 2d 528 (1989), and ***United States v. Monsanto***, 491 U.S. 600, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989). Those companion cases only held that a criminal defendant has no Sixth Amendment right to use forfeitable assets to employ counsel. Neither case decided whether due process requires a hearing at which a defendant could challenge the *forfeitability* of assets. ***Monsanto***, 491 U.S. at 615 n.10, 109 S. Ct. at 2666 n.10 ("We do not consider today, however, whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed.").[4]

***United States v. Musson***, 802 F.2d 384 (10th Cir. 1986), is also not to the contrary. There we interpreted 18 U.S.C. § 1963(e)(1)[5] and 21 U.S.C. § 853 and concluded that due

---

[4] Our decision in ***United States v. Nichols***, 841 F.2d 1485 (10th Cir. 1988), which foretold the results of ***Caplin*** and ***Monsanto***, is inapposite for the same reasons. *Id.* at 1491 n.4 ("[W]e have no occasion to decide whether the statutory procedures for granting an ex parte restraining order comply with due process.").

[5] Section 1963(e)(1), which is presently codified at 18 U.S.C. § 1963(d)(1), is identical in all pertinent respects to 21 U.S.C. § 853(e)(1), and "may be used to construe § 853 due to the similarity of the two statutes." ***United States v. Libretti***, 38 F.3d 523, 528 n.6 (10th Cir. 1994), *aff'd* 516 U.S. 29, 40, 116 S. Ct. 356, 363, 133 L. Ed. 2d 271

(continued...)

process did not require a hearing *before* restraining assets. We balanced the potentially infringed interests of the defendant with the interests of the government and concluded that at the pre-restraint stage of the proceedings the interests of the government weighed more heavily. *Musson*, 802 F.2d at 386-87; *accord* *Monsanto*, 924 F.2d at 1192-93; *United States v. Bissell*, 866 F.2d 1343, 1352 (11th Cir.), *cert. denied*, 493 U.S. 876, 110 S. Ct. 213, 107 L. Ed. 2d 166 (1989); *Moya-Gomez*, 860 F.2d at 727-28. *Musson* left open, however, whether a *post*-restraint hearing would be required. 802 F.2d at 386. Our decision also did not involve assets sought for legal and living expenses. This distinction is of course a sticking point. It is the potential erroneous deprivation of these important private interests that tips the *Mathews* balancing test in favor of requiring a hearing.

## V

For the reasons set forth above, we conclude that due process requires a district court to conduct a post-restraint, pre-trial hearing before continuing to freeze assets if a defendant needs the assets for reasonable legal and living expenses and makes a prima facie showing that the grand jury erred in determining the assets are traceable to the underlying offense.

The district court's order denying a pre-trial hearing is **VACATED** and the cause is **REMANDED** for proceedings consistent with this opinion.

---

[5](...continued)
(1995).