FILED
United States Court of Appeals
Tenth Circuit

May 17, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

SHAKEEL KAHN,

     Defendant - Appellant.

No. 17-8035

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:17-CR-00029-ABJ-1)**
_____

Megan L. Hayes, Laramie, Wyoming, for Defendant-Appellant.

Stephanie Hambrick, Assistant United States Attorney (John R. Green, United States Attorney, District of Wyoming, with her on the brief), Casper, Wyoming, for Plaintiff-Appellee.
_____

Before **HARTZ**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Defendant Shakeel Kahn seeks a district-court hearing to challenge the seizure of assets that he contends are necessary for him to retain an attorney to represent him in his upcoming criminal trial. The district court denied a hearing because he has *some* unseized assets with which to pay an attorney. We reverse and remand because the

proper test is whether he has sufficient unseized assets to pay for the reasonable cost of obtaining counsel of his choice.

In January 2017 a grand jury in the United States District Court for the District of Wyoming returned a 21-count indictment against Kahn (who is a physician) and others charging distribution of controlled substances and money laundering. The indictment included a criminal forfeiture count under 21 U.S.C. § 853, which listed a number of his assets that the grand jury identified as fruits of the alleged crimes. Most of those assets had been seized by the government before filing the indictment. Two weeks after the indictment, Kahn moved for a hearing to challenge the seizure of $1,140,699.95 in currency and bank accounts. He asserted that he needed this money to retain private counsel of his choice, noting that his only unseized assets were a $175,000 home encumbered by an $80,000 lien and a business that brought in less than $3,000 a month after taxes. He estimated that he would need at least $200,000 to pay counsel and that his total defense costs would be at least $450,000.

In April the district court denied the motion. The court recognized that the case is not a simple one—it had granted the government's motion to declare the case complex for purposes of the Speedy Trial Act—but it declined to consider whether Kahn's unseized assets were sufficient to retain counsel of his choice. It interpreted this court's opinion in *United States v. Jones*, 160 F.3d 641 (10th Cir. 1998), as requiring such a pretrial hearing only if (1) the defendant has *no* assets with which to pay an attorney and (2) there is good reason to believe that the grand jury erred in finding that the seized assets are traceable to the alleged crime. Under that interpretation of the first

2

requirement, the court needed to determine only whether a defendant had *any* assets remaining after seizure, not whether those assets would be sufficient to cover the cost of his defense. *See* R., Vol. 1 at 425–26 ("It is possible that the cost of defense is an inherent factor of the *Jones* test, but this Court will not consider the cost of defense as a factor in the *Jones* test without any supporting authority to do so or instruction from the Tenth Circuit to do so."). Because Kahn still had some unencumbered assets, the court held that he had failed to make the showing necessary to obtain a hearing. It therefore did not consider whether the assets had been properly tied to his alleged offenses.

Kahn filed a timely interlocutory appeal and obtained a stay of the proceedings. We have jurisdiction under the collateral-order doctrine. *See id.* at 644. We clarify our holding in *Jones*, and reverse and remand for further proceedings. A hearing on a pretrial challenge to the seizure of assets is not barred under the first prong of the *Jones* test just because the defendant has *some* unseized assets. The test is whether the defendant lacks sufficient unseized assets to pay for the reasonable cost of counsel of choice.

## I.    DISCUSSION

*Jones* is this court's leading precedent governing pretrial challenges by criminal defendants to the seizure of assets allegedly necessary to pay for an attorney. In that case the defendant had been indicted for health-care fraud. *See Jones*, 160 F.3d at 643. The indictment included a count alleging that certain assets were subject to forfeiture and the government invoked § 853(e)(1)(A) to freeze these assets pending trial, based solely on the indictment. *See id.* The defendant moved for a pretrial hearing to challenge the seizure so that some of the assets could be used for legal and living expenses. *See id.*

3

The district court denied the motion. It held that a defendant was not owed a hearing under either § 853 or the Fifth Amendment's Due Process Clause. *See id.* at 644. We reversed, concluding that the seizure of a defendant's assets without affording the defendant a pretrial hearing could violate due process. *See id.* at 649.

The Due Process Clause forbids the federal government from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. V. To assess its application in this context, *Jones* employed the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Jones*, 160 F.3d at 645. Under the *Mathews* approach a court must consider the "private interest affected by the restraint; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of an adversarial hearing; and the government's interest, including the administrative burden that an adversarial hearing would impose." *Id.*

We identified two important interests of the defendant: a property right and a right to counsel. Both parties in *Jones* acknowledged that "a restraining order issued under section 853(e)(1)(A) deprives one of property even though the assets named in the indictment are only frozen and may eventually be returned." *Id*. The defendant had a significant interest in "paying for ordinary and necessary living expenses (food, shelter, and the like) until the conclusion of her trial." *Id.* at 646. "A restraining order that prevents a defendant from supporting herself and her family pending and during trial would likely work an injustice with constitutional implications." *Id.*

In addition, the defendant had an essential interest in the Sixth Amendment's "qualified right to counsel of choice." *Id.* The right to counsel of choice "stems from a

4

defendant's right to decide what kind of defense he wishes to present, for the selection of one attorney over another can profoundly affect the course and outcome of trial." *Id.* (citation and internal quotation marks omitted). "To improperly impede this interest would likely work a permanent deprivation on a defendant—a defendant needs the attorney *now* if the attorney is to do him any good." *Id.* (internal quotation marks omitted).

We also noted the significant risk of erroneous deprivation under the procedures set forth in § 853(e)(1)(A)—in particular, reliance on an indictment to establish that property is forfeitable. *See id.* at 646. As we explained: "The nature of grand jury proceedings makes that finding susceptible to error." *Id.* "A grand jury investigation is not an adversarial process," and "potential indictees have no ability to correct inadvertent or deliberate distortions during the grand jury's fact-finding process." *Id.* And although the defendant could ultimately prevail at trial and get back her seized assets, that would be too late to help her during the litigation of her case. *See id.* The risk of improper deprivation, however, would be diminished by a pretrial adversarial hearing. *See id.*

As for the government's interest, we did not find particularly significant the government's purported interests in avoiding premature disclosure of its case and the preservation of prosecutorial resources, but we recognized that the government has an important interest in assuring "that funds illegally obtained are not laundered or secreted between the time a defendant is indicted and the time when his criminality is determined by actual conviction." *Id.* at 647 (internal quotation marks omitted).

5

We then weighed these interests and concluded that the "proper balance of private and government interests requires a post-restraint, pre-trial hearing but only upon a properly supported motion by a defendant." *Id.* Because a hearing cannot be justified if the defendant has no pressing need for the seized assets or if the assets were properly seized, a defendant must (1) "demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family," and (2) "make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the [crime charged]." *Id.* (brackets and internal quotation marks omitted). "Once a defendant satisfies these initial burdens, due process requires a district court to conduct an adversarial hearing at which the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense." *Id.*

This case turns on the first of *Jones*'s two requirements. The district court relied on our language that the defendant must show that he has "no assets, other than those restrained, with which to retain private counsel and provide for herself and her family." *Id.* Because Kahn indisputably had some equity in his Arizona home and a business that provided about $3,000 a month, the district court concluded that he was not entitled to a hearing.

We can hardly fault the district court for following that language in our *Jones* opinion. But that was not the only place in the opinion where we set forth the due-process requirement. At the end of the opinion we stated: "[W]e conclude that due

6

process requires a district court to conduct a post-restraint, pre-trial hearing before continuing to freeze assets if a defendant needs the assets for reasonable legal and living expenses and makes a prima facie showing that the grand jury erred in determining the assets are traceable to the underlying offense." *Id.* at 649. Our two formulations of the test can be reconciled by reading an implicit reasonableness requirement into the test relied on by the district court. In other words, when we said "no [unrestrained] assets . . . to retain private counsel," *id.* at 647, it was to be understood that we meant no unrestrained assets *sufficient to reasonably be able* to retain counsel of choice. With this understanding, we need not choose between the two expressions of the standard set forth in *Jones*.

This reading captures the reasoning of the *Jones* opinion. Given the explanation in *Jones* of the importance to a criminal defendant of having counsel of his choice (to say nothing of having enough money to provide food, clothing, and shelter to his family), we cannot believe that the *Jones* panel thought that a defendant can be denied a hearing simply because he possessed, say, $5,000 in assets, regardless of his family's basic needs or the complexity of the charges against him. The issue instead must be whether the unseized assets are adequate to provide "for reasonable legal and living expenses." *Id.* at 649. If not, a hearing is justified upon a prima facie showing that seized assets are not traceable to the charged offense.

Our post-*Jones* precedents are not to the contrary. The government points to *United States v. Gordon*, 710 F.3d 1124, 1138 (10th Cir. 2013), which quoted the language in *Jones* relied on by the district court in this case. But there was no real

7

question about whether the defendant in *Gordon* lacked funds for his defense. In that case the defendant was appealing his conviction and argued that the seizure of funds had deprived him of his Sixth Amendment right to counsel. *See id.* at 1135–40. The district court, however, had found that the defendant had paid his defense attorney $900,000 in fees and expenses, and we noted that the attorney had fully represented him throughout trial. *See id.* at 1138–39. Our ground for affirming the conviction was not that the defendant possessed *some* unseized assets; rather, it was because his assets were so substantial that there was no indication his defense had been materially impaired by the seizure of assets. *See id.* at 1138–40; *see also United States v. Gordon*, 657 F. App'x 773, 776–79 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 1113 (2017) (rejecting defendant's habeas claim on essentially the same ground).

For similar reasons, our decision in *United States v. Clark*, 717 F.3d 790, 799 (10th Cir. 2013), does not support the government's position. In *Clark* the government placed a caveat on the defendant's home and restricted his other financial activities, including his ability to liquidate some stock holdings. *See id.* The defendant complained on appeal that he had been unable to pay for counsel with his business earnings or by obtaining a loan on his house. *See id.* Because he had not challenged the seizure in district court, we reviewed his claim only for plain error. *See id.* at 802. We rejected the challenge for several reasons. The only one relevant to this appeal is that the defendant had failed to show prejudice to his right to counsel. *See id.* at 802–04. In particular, we did not deny the claim on the ground that the defendant had *some* unseized assets. *See id.*

Nor have other circuit courts adopted a stringent some-assets standard. Although they have not all adopted identical language, in general they require only that the defendant show that his unrestrained assets are insufficient to retain counsel of choice or to otherwise conduct his defense. *See, e.g., United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013) (defendant had only the "minimal" burden of showing that he lacks "sufficient alternative, unrestrained assets to fund counsel of choice"); *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001) (defendant must "show a bona fide need to utilize seized assets to conduct his defense" (brackets, ellipsis, and internal quotation marks omitted)); *United States v. Moya-Gomez*, 860 F.2d 706, 730 (7th Cir. 1988) (to obtain a hearing, defendant must show only "a bona fide need to utilize assets subject to the restraining order to conduct his defense").

Thus, we reverse and remand to the district court to reconsider Kahn's request for a hearing under the *Jones* two-part test as construed in this opinion. That is, Kahn should be granted a hearing if he can (1) demonstrate to the district court's satisfaction that he has insufficient unseized assets to afford reasonable representation by counsel of his choice and (2) make a "prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *Jones*, 160 F.3d at 647 (internal quotation marks omitted).

## II.    CONCLUSION

We **REVERSE** the district court's order and **REMAND** for further proceedings consistent with this opinion.