**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

      Plaintiff - Appellee,

v.

MICHAEL S. YOUNG; MARIA C.
YOUNG; SALVE REGINA TRUST; TF
ALLIANCE, LLC; WEST BEACH LLC;
CASA CONEJO LLC; HASE HAUS,
LLC,

      Defendants - Appellants,

and

MICHAEL S. STEWART; BRYANT E.
SEWALL; HANNA OHONKOVA
SEWALL; VICTORIA M. STEWART,

      Defendants - Appellants,

MEDIATRIX CAPITAL INC.; BLUE
ISLE MARKETS, INC., St. Vincent & the
Grenadines; BLUE ISLE MARKETS,
LTD; MEDIATRIX CAPITAL FUND
LTD.; ISLAND TECHNOLOGIES LLC;
MICHAEL C. BAKER; WALTER C.
YOUNG, III; ARUAL LP; DCC
ISLANDS FOUNDATION; KEYSTONE
BUSINESS TRUST; WEINZEL, LLC;
MEDIATRIX CAPITAL, LLC; BLUE
ISLE MARKETS INC., Cayman Islands;
THE 1989 FOUNDATION; MEDIATRIX
CAPITAL PR LLC,

      Defendants.

Nos. 21-1061, 21-1075 & 21-1322
(D.C. No. 1:19-CV-02594-RM-SKC)
(D. Colo.)

-----------------------------

MARK CONLAN,

     Receiver - Appellee.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **HOLMES**, and **McHUGH**, Circuit Judges.
_____

These consolidated appeals arise from an SEC civil enforcement action in which the district court entered a preliminary injunction freezing the defendants' assets. Defendants twice moved to modify the injunction, specifically, to release some of those assets back to them to pay for counsel and living expenses. The district court denied both motions, and defendants have appealed from those orders. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.

## I. BACKGROUND & PROCEDURAL HISTORY

### A. The TRO and Preliminary Injunction Freezing Defendants' Assets

In September 2019, the SEC filed a civil enforcement action in the United States District Court for the District of Colorado, naming Michael Young, Michael

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Stewart, and Bryant Sewall as primary defendants. The SEC named their wives as relief defendants. The SEC says the primary defendants raised at least $125 million from private investors, claiming the money would be pooled and invested using a highly profitable algorithmic trading strategy. But they allegedly diverted at least $35 million directly to themselves and used the money to buy luxury properties and vehicles. As for the money they actually invested, their strategy usually resulted in losses, but they represented otherwise to their investors through fictitious account statements purporting to show profits.

Upon filing the complaint, the SEC moved *ex parte* for a temporary restraining order freezing defendants' assets. Specifically, the SEC asked for an order freezing a little over $250 million, representing the roughly $125 million raised from private investors and an additional $125 million that the SEC planned to seek as a civil penalty.

The district court granted the *ex parte* order the next day. The district court explained that the freeze was "necessary to preserve the *status quo* and to protect [the] Court's ability to award equitable relief in the form of disgorgement of illegal profits . . . as well as [to award] civil penalties." Aplt. App. vol. I at 226. The district court also ordered defendants to appear in court in two weeks for a preliminary injunction hearing.

Ahead of the hearing, the parties stipulated that the district court could convert the TRO into a preliminary injunction, "subject to [defendants'] right to move the Court for relief from the asset freeze." *Id.* at 246. In effect, the parties stipulated to

3

defer litigating the propriety of the asset freeze unless and until a defendant chose to challenge it.

As noted, the asset freeze extends up to about $250 million. It is unclear whether defendants ever possessed that amount. A court-appointed receiver has since gained control over about $30 to $35 million in defendants' assets.

### B.    Defendants' Jurisdictional Attack

In December 2019, defendants moved to dismiss the action, arguing that their business never involved "securities" within the meaning of federal securities laws, so the lawsuit "fall[s] outside the scope of the SEC's jurisdiction." Aplt. App. vol. II at 279. Defendants characterized this motion as a Federal Rule of Civil Procedure 12(b)(1) attack on the district court's subject matter jurisdiction. The district court denied the motion in June 2020, reasoning that "the jurisdictional issue is intertwined with the merits of the case, [so] dismissal for lack of subject matter jurisdiction is not appropriate." *Id.* at 305.

### C.    Defendants' First Motion for Partial Relief from the Asset Freeze

In November 2020, the three primary defendants, joined by their wives, each moved for partial relief from the asset freeze, arguing as follows:

- Michael Young and Maria Young requested release of $60,000. They claimed that the asset freeze forced them and their children to live on government welfare, and they needed $60,000 to pay their attorney. They further argued that some of their jewelry and furniture, estimated to be worth about $28,000, should not have been frozen because they

4

acquired them before the alleged fraudulent scheme began.  They also claimed that Michael Young was unaware of any fraud (*i.e.*, that he was just as much a victim as the investors).  Finally, they asserted that $60,000 was a reasonable request because it was only 1% of the $6 million in frozen assets attributable to them—and $6 million was, in any event, far more than the SEC could ever require them to disgorge in light of a recent Supreme Court decision, *Liu v. SEC*, 140 S. Ct. 1936 (2020).  (We will discuss *Liu* in more detail below.)

- Bryant Sewall and Hanna Sewall requested release of $260,000 (out of an unstated amount of frozen assets attributable to them) to pay their attorney, and for living expenses.  They claimed that Bryant could not work, apparently because he was in Ukraine with Hanna (a Ukrainian citizen who had yet to be issued a visa to accompany Bryant to the United States).  They further claimed that some of Bryant's assets, estimated to be worth about $119,000, should not have been frozen because he acquired them before the alleged fraudulent scheme began.

- Michael Stewart and Victoria Stewart requested $500,000 (out of an unstated amount of frozen assets attributable to them) to pay their attorney, and for living expenses.  They claimed that Michael could not work because he had become disabled due to injuries and associated surgeries.  They further claimed that some of Michael's assets,

estimated to be worth about $114,000, should not have been frozen because he acquired them before the alleged fraudulent scheme began.

The district court denied these motions in January 2021, offering several reasons. First, "[n]one of the motions for relief refutes [the SEC's] contention that the assets currently available will be insufficient to compensate the defrauded investors in this case. Defendants' motions are subject to denial on this basis alone." Aplt. App. vol. IV at 1003. Second, "none of these motions shows that the funds requested are untainted by the alleged underlying fraud. This, too, is an independent basis for denying the motions." *Id.* Third, "[t]he fact that Defendants owned some assets before their alleged fraudulent activity does not mean they are entitled to deduct the value of those assets from the currently frozen assets which Defendants have not shown to be untainted." *Id.* Fourth, the Youngs' claim that Michael Young was unaware of the fraud did not matter because "he does not deny that such fraud occurred" and "protecting the victims of that fraud is the primary purpose of the asset freeze." *Id.* Finally, the defendants had not explained the mismatch between the value of their allegedly untainted assets and the amounts they were requesting (*e.g.*, the Youngs' claimed about $28,000 in untainted assets but asked the court to unfreeze $60,000). *Id.* at 1003–04.

The Youngs appealed from the district court's order, which became No. 21-1061 in this court. The Stewarts and Sewalls together filed a separate notice of appeal from the same order, which became No. 21-1075. We then procedurally consolidated those appeals.

**D.  The Stewarts' and Sewalls' Renewed Motion for Partial Relief from the Asset Freeze**

In March 2021, the Stewarts and Sewalls filed a renewed motion in the district court to partially unfreeze their assets.  The motion was partly based on additional evidence that some of their assets were untainted by the alleged fraud.  The major development, however, was that Michael Stewart and Bryant Sewall had now been criminally indicted based on the conduct alleged in the civil complaint.[1]  Thus, they asserted an even greater need to unfreeze assets, so they could pay both their civil and criminal defense attorneys.  They also asked the court to put the SEC "to the test of showing that the assets are forfeitable (or disgorgable [sic])."  Aplt. App. vol. IV at 1156.  Finally, they asked the court to release $760,000, apparently representing the sum of $260,000 (which the Sewalls previously requested) and $500,000 (which the Stewarts previously requested).  In their reply brief, however, they revised their request to $260,000 for the Sewalls and $232,000 for the Stewarts.

In September 2021, the district court denied the renewed motion.  The district court first stated that it lacked authority to grant the motion because the parties had appealed its denial of their original motion.  The court then invoked Federal Rule of Civil Procedure 62.1(a)(2) ("If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may . . . deny the motion . . . ."), and announced that it would deny the motion "for substantially the same reasons provided in its previous Order," Aplt. App. vol. V

---

[1] Michael Young was not indicted.

7

at 1222.  And, "to the extent [the criminal indictment] moves the needle in [the Stewarts' and Sewalls'] favor, the Court still finds the relief requested is not appropriate for the reasons given in the previous Order." *Id.* at 1222–23.  Finally, the court denied the request for a hearing: "In light of Defendants' pending appeal, the Court finds that holding a hearing at this stage would not serve the interests of judicial efficiency." *Id.* at 1223.

The Stewarts and Sewalls appealed from that order, which became No. 21-1322 in this court.  We then procedurally consolidated that case with Nos. 21-1061 and 21-1075.[2]

## II.    THE DISTRICT COURT'S SUBJECT MATTER JURISDICTION

Appellants continue to question the district court's jurisdiction, based on their theory that the alleged scheme did not involve "securities" within the meaning of federal securities laws.  But the district court plainly has jurisdiction over actions to enforce federal securities laws.  *See* 15 U.S.C. § 77v(a).  Whether a particular action involves "securities" is a merits question, not a jurisdictional question.  *See SEC v. Scoville*, 913 F.3d 1204, 1219 (10th Cir. 2019).  We therefore reject appellants' jurisdictional challenge.

---

[2] The Stewarts and Sewalls have jointly filed an opening brief, and the Youngs filed their own opening brief.  The SEC has filed a single response brief.  Bryant Sewall (but apparently not his wife, nor the Stewarts) filed a reply brief, and the Youngs filed their own reply brief.  In this order and judgment, any argument attributed to "appellants" refers to an argument that appears in both the Young briefing and the Stewart/Sewall briefing, or an argument that appears in one set of briefs and is explicitly incorporated by reference in the other set of briefs.

## III.    ANALYSIS

We require that, "[f]or each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on."  10th Cir. R. 28.1(A).  The Stewarts and Sewalls entirely ignore this rule.  The Youngs sometimes attempt to satisfy it, but not for all issues.  As explained further below, in those instances where they provide record references, we have examined the cited portions and they do not match the arguments made on appeal.  Nor could we find where any issue was preserved ourselves, with one exception.

"A federal appellate court, as a general rule, will not reverse a judgment on the basis of issues not presented below."  *Petrini v. Howard*, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) (per curiam).  Conceivably, we could break from the general rule in this case because the SEC does not argue that appellants failed to preserve their arguments in the district court.  The SEC instead "unreservedly engages with the merits of [the non-preserved] argument[s]."  *SEC v. GenAudio Inc.*, 32 F.4th 902, 947 (10th Cir. 2022).  This is often a reason for us to exercise our discretion to resolve such arguments on their merits.  *Id.*  But we do not choose that course here because we find the parties' briefing on these issues to be underdeveloped.  We appreciate that their arguments amount to more than stray sentences.  *Cf. Eizember v. Trammell*, 803 F.3d 1129, 1141 (10th Cir. 2015) ("[S]tray sentences . . . are insufficient to present an argument . . . .").  Still, "to avoid error, we are dependent on the full development of issues through the adversarial process."  *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007).  We find that the parties' treatment of these issues lacks

9

the "vigorous adversarial testing" needed to give us confidence that we are being guided toward a sound conclusion. *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013).

Thus, we conclude that the parties forfeited the following arguments in the district court, *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011), and, because they have not argued for plain-error review, they have effectively waived them for purposes of this appeal, *see Fish v. Kobach*, 840 F.3d 710, 729–30 (10th Cir. 2016):

**1.** Congress never gave the SEC authority to seek asset freezes before judgment, so the district court should never have entered the TRO or preliminary injunction.

**2.** The Fifth Amendment guarantees a right to retain counsel before the government deprives someone of the money they would use to pay for a defense against that deprivation.

**3.** The district court failed to apply a multi-factor balancing test when deciding whether to modify the asset freeze. The Youngs say they preserved this issue, but they only preserved arguments that would fit within some of the factors they now propose. Their argument on appeal—that a balancing test exists and the district court must follow it—is materially different. *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013) ("[The waiver] rule applies when a litigant changes to a new theory on appeal that falls under the same general category as an

10

argument presented at trial or presents a theory that was discussed in a vague and ambiguous way." (internal quotation marks omitted)).

**4.** In light of *Liu v. SEC*, the district court must hold a hearing to determine how much disgorgement the SEC can reasonably hope to recover, and then limit the asset freeze accordingly. In *Liu*, the Supreme Court held—in the context of a postjudgment disgorgement award—that Congress's authorization for the SEC to seek "equitable relief," 15 U.S.C. § 78u(d)(5), includes the authority to seek "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims," 140 S. Ct. at 1940.[3] The Supreme Court decided *Liu* in June 2020, after the district court entered the preliminary injunction, and appellants eventually brought *Liu* to the district court's attention—but not for the proposition that the district court must hold a hearing and narrow the prejudgment asset freeze to estimated net profits. Rather, the Youngs raised *Liu* to emphasize the reasonableness of their $60,000 request as compared to the $6 million attributed to them, which they described as "far more than an amount that the SEC can obtain in disgorgement." Aplt. App. vol. II at 324. And the Stewarts and Sewalls raised *Liu* without making

---

[3] Following *Liu*, Congress amended § 78u to specify, "In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, div. F, tit. LXV, § 6501(a)(3), 134 Stat. 3388, 4626 (2021) (codified at 15 U.S.C. § 78u(d)(7)). But no party argues that Congress's endorsement of the "disgorgement" remedy affects the Supreme Court's discussion of the limits to that form of relief.

any clear argument based on it.  They seem to have inserted it merely to bolster the overall notion that things had changed since the district court entered the preliminary injunction and the time was right to revisit it.  *See* Aplt. App. vol. IV at 1155–57.

"Ordinarily, a district court does not abuse its discretion in deciding not to hold an evidentiary hearing when no such request is ever made."  *Robinson v. City of Edmond*, 160 F.3d 1275, 1286 (10th Cir. 1998).  Thus, we will not vacate and remand for a hearing the parties did not request.[4]

* * *

We now turn to the only argument we find properly preserved, which arises from the district court's September 2021 order denying the Stewarts' and Sewalls' renewed motion for partial relief from the asset freeze, *i.e.*, the order appealed from in No. 21-1322.[5]

The Stewarts and Sewalls emphasize that Michael Stewart and Bryant Sewall have now been indicted, so the asset freeze is interfering with their Sixth Amendment right to counsel of their choosing.  *See, e.g.*, *United States v. Gonzalez-Lopez*,

---

[4] The caption and the conclusion of Youngs' motion included a generic request for a hearing, *see* Aplt. App. vol. II at 313, 325, but they never explained the purpose of the hearing.  Most relevant for present purposes, they did not argue that *Liu* entitles them to a hearing so that the asset freeze could be limited to estimated net profits.

[5] The Youngs joined the Stewarts' and Sewalls' renewed motion.  That motion focused on the Stewarts' and Sewalls' unique circumstances (their finances and the recent criminal indictment), so it is difficult to understand what the Youngs believed they were joining.  Regardless, the Youngs did not file a notice of appeal from the district court's order denying the renewed motion, so they have abandoned whatever arguments they may have against it.

548 U.S. 140, 144 (2006) ("[A]n element of [the right to counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him."). They also invoke the Fifth Amendment right to due process when the government has seized property. *See, e.g.*, *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998) (holding that, under certain conditions, a criminal defendant whose assets have been seized in anticipation of forfeiture must receive "an adversarial hearing at which the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense"). In light of these authorities, they argue that "the SEC at a minimum can and should be put to the test of showing that the assets are forfeitable (or disgorgable [sic]), as it is clear that the defendants cannot afford counsel of their choice without the use of some portion of the assets under restraint." Stewart/Sewall Opening Br. at 13. This mimics almost verbatim what they requested from the district court. *See* Aplt. App. vol. IV at 1156.

The district court said it was denying the renewed motion "for substantially the same reasons provided in its [order denying the previous motions for relief from the asset freeze]." Aplt. App. vol. V at 1222. The district court also said it was denying the request for a hearing because it "would not serve the interests of judicial efficiency" given the pending appeal of its earlier order. *Id.* at 1223. Taking the district court's two rulings together, we understand it to mean: (i) the record as presented in the renewed motion did not justify relief, and (ii) a hearing to expand the record would have been futile at that time because the pending appeal divested it of jurisdiction to grant relief.

As to the first ruling, we see no error.  This is a matter trusted to the district court's discretion.  *See Cablevision of Tex. III, L.P. v. Okla. W. Tel. Co.*, 993 F.2d 208, 210 (10th Cir. 1993) ("The . . . refusal to dissolve or modify an existing injunction[] is within the discretion of the district court, and its decision will not be reversed absent an abuse of that discretion.").  The Stewarts and Sewalls seem to assume that the district court should have taken their representations about their financial situation at face value, and then the court would have been compelled to exercise its discretion to grant relief.  They offer no authority supporting either proposition.  Even assuming the first half of the argument (a duty to take their representations at face value), we are not persuaded that the second half of the argument holds.  The Stewarts and Sewalls asserted that some of their assets are untainted and some probably could not be subject to disgorgement, and they further asserted certain upcoming financial needs, but they concluded with a request for a six-figure sum that bore no obvious connection to their preceding assertions about their assets and future needs.  We cannot say, in such circumstances, that the district court was constrained to exercise its discretion to give the movants what they asked for.

Turning to the district court's refusal to hold a hearing due to the pending appeal, we need not resolve whether the district court correctly judged its authority under the circumstances.  Upon issuing our mandate, the district court will unquestionably regain jurisdiction.  Any ruling from us that it had jurisdiction all along would have no real-world effect on the parties because the district court

14

(obviously) cannot go back in time and hold a hearing when the Stewarts and Sewalls first requested it. *See, e.g.*, *Fleming v. Gutierrez*, 785 F.3d 442, 444–45 (10th Cir. 2015) (observing that this court's rulings must "have some effect in the real world" or they amount to impermissible advisory opinions (internal quotation marks omitted)). The most it could do would be to hold a hearing now. Thus, we will remand with instructions that the district court decide on the merits, in the first instance, whether to hold that hearing.

## IV. CONCLUSION

We affirm both of the district court's orders denying relief from the asset freeze. We remand this matter to the district court with instructions that it revisit whether to hold a hearing, as requested by the Stewarts and Sewalls. The clerk shall issue the mandate forthwith.

Entered for the Court

Jerome A. Holmes
Circuit Judge

15